[No. 2467]

## DAVE DONOGHUE, M. J. McVEIGH, AND JAMES McGUIRE, RESPONDENTS, *v.* TONOPAH ORIEN- TAL MINING COMPANY (A CORPORATION), APPELLANT.

[198 Pac. 553]

1. MINES AND MINERALS — NONCOMPLIANCE WITH RESOLUTION OF CONGRESS AS ·TO FILING NOTICES TO HOLD CLAIMS WITHOUT WORK DURING WAR HELD NOT TO AFFECT RIGHTS.

Joint resolution of Congress suspending requirements of annual assessment work on mining locations during the years 1917 and 1918, though mandatory in terms, does not cut off the rights of defendants, locators of mining claims, as against plaintiffs, subsequent locators overlapping defendants' prior location, where defendants' failure to file notices of desire to hold their claims in the proper county was not pursuant to any attempted fraud or deceit, where they had no intention, shown by competent, clear, and satisfying proof, of abandoning their claims, where there was good faith and an open, honest effort to comply by filing notices in the appropriate county, and where the neglect or omission to file the notices was that of others and not attributable to the claim owners, nonresidents of the district involved.

2. STATUTES—RESOLUTION OF CONGRESS SUSCEPTIBLE OF TWO INTER- PRETATIONS WILL BE GIVEN THAT BEST COMPORTING WITH REASON.

Joint resolution of Congress suspending the requirements of annual assessment work on mining claims during the years 1917 and 1918, being susceptible of two interpretations, will be given that which best comports with reason and justice, particularly in an equitable action to quiet title involving questions peculiarly equitable in their nature.

3. EQUITY—EQUITY NEITHER ENFORCES FORFEITURES NOR AIDS IN
ASSERTION OF LEGAL RIGHT CONTRARY TO JUSTICE.
> Equity does not enforce forfeitures nor extend its aid in
> the assertion of a mere legal right contrary to the clear equity
> and justice of the case.

APPEAL from the Fifth Judicial District Court, Nye
County; *Mark R. Averill,* Judge.

Action by Dave Donoghue and others against the
Tonopah Oriental Mining Company, a corporation.
From judgment for plaintiffs, defendant appeals.
**Reversed, with directions. Petition for rehearing
denied.** (COLEMAN, J., dissenting.)

*Hugh Henry Brown* and *Walter Rowson,* for Appellant:

The act of Congress of October 5, 1917, is a remedial
act. "Statutes tending to effect an object of great
public utility" are remedial. 1 Fed. Stats. Ann. (2d ed.),
p. 119. A remedial statute must be liberally construed.
"Courts are justified in giving weight to considerations
of hardship or injustice that may arise from a particular
construction, if a different construction can be given
which is consonant with acknowledged principles of
justice." 1 Fed. Stats. Ann. (2d ed.) par. 74, p. 101;
Becker v. Brown, 91 N. W. 178; Traudt v. Hegerman,
60 N. E. 1011; U. S. v. Heth, 2 L. Ed. 479; McCullough
v. Murphy, 125 Fed. 149.

There is no forfeiture clause in the act. Forfeitures
are odious to the mining law. 2 Lindley on Mines, sec.
624. Where either of two constructions can be given a
statute, and one of them involves a forfeiture, the other
is to be preferred. 1 Fed. Stats. Ann. (2d ed.) par. 68,
p. 92; Farmers Bank v. Dearing, 91 U. S. 35; 27 Cyc.
600; Emerson v. McWhirter, 133 Cal. 510; Argentine
M. Co. v. Benedict, 55 Pac. 559; Belcher Con. G. M. Co. v.
Defarrari, 62 Cal. 160; Temescal Oil M. Co. v. Salcido,
137 Cal. 211. "The courts will always give such a con-
struction to statutes providing for forfeitures as will be
consistent with justice and the dictates of natural

reason, although contrary to the strict letter of the law." 19 Cyc. 1358.

*W. R. Gibson,* for Respondents:

Congress, in its legislative capacity, in enacting the law under consideration, adopted the policy of notice, or statutory requirement of notice, to operate by recordation as constructive notice, and must have intended that the rule in relation to constructive notice by record would be adhered to in the construction of the statute. It was the intention to require of claimants that they comply strictly with the law if they would hold their property against forfeiture under the general mining laws. Such was clearly the purpose of Congress, which had the authority to make any change it saw fit in the law. It is not within the province of the court to give it such construction as will render it nugatory. Congress did not repeal the law requiring assessment work, but provided a means to establish a record notice to all persons of an intention to hold the mining claims, and limited the benefits of the act to "every claimant of a mining claim who desires to claim the benefits of the act."

It is a rule universally applied that a deed or other instrument affecting the title to land must be recorded in the county where the land lies, to be effective as notice. 23 R. C. L. 180. Where constructive notice is provided by statute, it has the same effect as actual notice, and binds equally. 20 R. C. L. 342. "Where a specified mode of giving notice is prescribed by statute, that method is exclusive." Idem, 343.

By the Court, SANDERS, C. J.:

The complaint in this action is the short form of a complaint to quiet title to real estate. This action, however, was brought to determine an adverse claim to a certain piece of mining ground situate in the Tonopah mining district, Nye County, Nevada, segregated

from the public domain by conflicting lode mining locations (that of the plaintiffs overlapping the prior location of the defendant).

The case differs from ordinary actions of this character in that the record shows, and it is conceded to be the fact, that plaintiffs base their right to locate the ground, primarily, upon the assumption that the failure and neglect of defendant's predecessors in interest to comply literally with the proviso contained in a joint resolution of Congress caused the ground to revert to the public domain and rendered it subject to relocation. The resolution referred to was approved on October 5, 1917, by the Sixty-Fifth Congress. It is entitled:

"Joint resolution to suspend the requirements of annual assessment work on mining claims during the years nineteen hundred and seventeen and nineteen hundred and eighteen." U. S. Stats. L. 1917–19, p. 343.

The resolution reads as follows:

"Resolved by the Senate and House of Representatives of the United States of America in Congress assembled: That in order that labor may be most effectively used in raising and producing those things needed in the prosecution of the present war with Germany, that the provision of section twenty-three hundred and twenty-four of the Revised Statutes of the United States which requires on each mining claim located, and until a patent has been issued therefor, not less than $100 worth of labor to be performed or improvements to be made during each year, be, and the same is hereby, suspended during the years nineteen hundred and seventeen and nineteen hundred and eighteen: Provided, that every claimant of any such mining claim in order to obtain the benefits of this resolution shall file or cause to be filed in the office where the location notice or certificate is recorded on or before December thirty-first, of each of the years nineteen hundred and seventeen and nineteen hundred and eighteen, a notice of his desire to hold said mining

claim under this resolution: Provided further, that this resolution shall not apply to oil placer locations or claims.   *   *   * "

In the case at bar it is conceded that the claim owners had no idea or intention of abandoning their mining ground prior or subsequent to the 31st day of December, 1918; but, on the contrary, the testimony shows, and it is not disputed, that the owners in 1917 filed for record in the recorder's office of Nye County (where the certificate of location was recorded in 1915) their notice of desire to hold their claims under the resolution of Congress for both years 1917 and 1918, apparently believing that the one notice would answer for both years.   In this, under a ruling of the Department of Justice, they were mistaken, and it became necessary for them, in order to obtain the benefits of the resolution, to file a like notice for the year 1918.   They attribute their failure to file the notice in the recorder's office of Nye County for the year 1918, as they had done in 1917, to the following facts and circumstances:

The claim in dispute is one of a group consisting of four contiguous claims, known generally as the "Homestake Group."   The history of the ground covered by the group dates from the formation of the Tonopah mining district.   The group in 1917 was owned in common by three persons, all of whom were absent from the State of Nevada in 1918.   One of the owners died in that year.   The dividing line between Nye and Esmeralda Counties cut through the group, leaving the claims partly in Nye and partly in Esmeralda County.   The exact location of the true line between these counties was a matter of doubt, speculation, and uncertainty until after the year 1913, when the legislature enacted a law authorizing the officials of these counties to reestablish it.   Assuming that this was done, nevertheless much of the testimony in the case shows that the dividing line, in so far as it affects the ground covered by the group, was still a matter of doubt.   But one claim of the

group here in controversy is in Nye County. Much testimony was offered by the defendant to show that the owners of the group and others were in doubt as to how the dividing line as established affected the group and other mining ground in its vicinity.

The proof shows that in 1918 one of the owners lived at Los Angeles and the other at Sacramento, Calif. Each wrote urgent letters, one to his friend in Tonopah and the other to his father-in-law, also residing there, to do all that was necessary and required to be done to hold their claims under the resolution of Congress for the year 1918. The friend of the owner living in Sacramento prepared the required notice and presented it to the recorder of Nye County for filing, in the month of December, 1918. He was informed by the recorder that the proper place for filing the notice was in the recorder's office of Esmeralda County, at Goldfield, Nevada. Thereupon he caused the notice to be filed in the recorder's office in said county, on or about the 27th day of December, 1918. Relying on the representation of the recorder of Nye County as being official and correct, he gave no further consideration to the matter, believing, of course, that he had complied, for and on behalf of his friend, with the requirement of the resolution of Congress.

The other owner, living in Los Angeles, wrote his father-in-law on the 10th of December, 1918, to do for him all that was necessary and required to be done under the resolution to hold his claims, stating therein that he did not want to give them up. This was followed by another communication, of December 20, 1918, in which he inclosed a formal notice of desire to hold the claims in accordance with the resolution of Congress, not knowing of the steps taken by his coowner to hold the ground, and instructed his father-in-law to file the notice in Tonopah, Nye County. The father-in-law was of the same opinion as the county recorder of Nye County that Goldfield was the proper place for the

recordation of the notice, basing his opinion upon his own experience, with the uncertainty of the whereabouts of the true dividing line between Nye and Esmeralda Counties as it passed through the Homestake Group and other mining locations in that vicinity; and it was his opinion also that as the property consisted of a group of claims the notice required could as well be filed in either county, and therefore he caused the notice to be filed in Esmeralda County.

The trial court, in arriving at its ultimate conclusion, disregarded all defendant's evidence, and decided that the failure of defendant's grantors to literally comply with the proviso operated as a forfeiture of the ground; that plaintiffs having entered upon the ground and made a valid location, the forfeiture was completed, and rendered a decree confirming and quieting title in plaintiffs. The defendant appeals.

We do not think it was the intention of Congress that the proviso should be interpreted so as to result in injustice, oppression, or absurd consequences. The particular situation, as disclosed by the above statement of facts, made the question of the interpretation of the proviso one to be influenced and controlled by the broad and important inquiry whether it was the intention of Congress to declare a forfeiture where the claim owner honestly and in good faith endeavored to comply with the terms of the proviso, but failed for the reasons above stated.

It is not a question of construction of the proviso, but one of interpretation as to whether or not Congress intended that its terms should be so inflexible as not to permit of exceptions. We think the meaning and effect of a public resolution of this character is to be determined under broad rules of liberal interpretation, especially as it appears upon the face of the resolution that it was approved when the government was confronted with imminent exigencies, emergencies, and perils. It is true that every claim owner was not engaged directly in helping to win the war with Germany, which was the moving cause of the resolution.

But Congress evidently assumed that every able-bodied citizen, or person who had declared his intention to become such, holding mining ground under the government's conditional grant, stood ready in return for its favor to bend his energies and lend his substance to the aid of the government in its time of need. But it is insisted that this public purpose yields to the strict letter of the proviso, which when interpreted literally shows that the assessment work was suspended for the benefit of the individual claim owners, and that a claim owner who had failed to file or cause to be filed his notice of desire to hold lost his claim, and had no standing in a court of law or equity. We are not construing the proviso; it needs no construction. We are endeavoring to find the intention of Congress where a claimant failed and neglected, without fault of his own, but through an honest mistake, attributable to others, to cause to be filed in the proper recorder's office his notice of desire to hold his ground.

1. If the proviso is solely for the benefit of the individual claim owner, we are not in accord with an interpretation that nullifies its beneficent purposes. We think that reflection inevitably leads to the conclusion that exceptions, which are present and concurring in this case, arise from a failure to comply literally with the terms of the proviso. First, there is no fraud or deceit; second, no intention, shown by competent, clear, and satisfying proof, to abandon the claims; third, there is good faith, and an open and honest effort to comply; and, fourth, excusable negligence or omission of others to file the notice, not attributable to the claim owner.

This interpretation is supported, in a measure, by that of the Interior Department in a case arising under the Suspensory Act of 1893 (28 U. S. Stat. 6). The act of 1893, suspending the assessment work for that year, came before the department in Cain et al. v. Addenda Mining Co., 24 Land Dec. 18. The owner was permitted to hold the ground under the resolution, though the company had not filed any declaration of intention

whatever. It is true that it was in a contest which involved fraud of the worst kind, still the ruling indicates that each case arising between claim owners and third parties for failure to comply with the resolution is to be controlled and decided upon its own particular facts and circumstances.

2, 3. It is true, from the situation developed from the trial of this case, that the representatives of the true owners of the ground in dispute, though acting in good faith, upon their own showing, could have taken the precaution, being in doubt, to file the notice in both Nye and Esmeralda Counties; but their omission so to do, under the particular circumstances, should not be visited upon the owners. In arriving at this conclusion, we are mindful that it is not the province of courts to concern themselves with the injustice and inconvenience or hardships of a law where its meaning is plain. Such a matter is addressed to Congress. But where it is clear that a strict and literal interpretation of a public resolution, concerning land in which the government has a proprietary interest, will result in manifest injustice, we may scrutinize it closely to see if it will not admit of some other interpretation. We take it that Congress is presumed to have intended an interpretation which would avoid results of this character. We freely admit that the language of the proviso is susceptible of the interpretation that it is mandatory in terms, but we are of the opinion that its resulting effect is doubtful and susceptible of two interpretations, and under the well-settled rule we give it that interpretation which best comports with reason and justice. State v. Dovey, 19 Nev. 396, 12 Pac. 911; State v. Kruttschnitt, 4 Nev. 178. See, also, 11 Ency. U. S. Sup. Ct. Rep. p. 151. It must be understood that this is an equitable action to quiet title that involves questions peculiarly equitable in their nature. Equity neither enforces forfeitures nor extends its aid in the assertion of a mere legal right contrary to the clear

equity and justice of the case. Jones v. G. I. Co., 101 U. S. 622, 25 L. Ed. 1030; Defanti v. Allen Clark Co., 45 Nev. 120; 198 Pac. 549.

Entertaining the view that the facts in this case are such as in equity show the defendant to have the better right to the possession of the ground, it is the order that the judgment of the lower court be reversed, with directions to render and cause to be entered a decree in favor of the defendant, in accordance with the prayer of its affirmative defense, without further proceedings.

It being conceded that our conclusion is decisive of the case, we do not discuss other important and interesting questions.

It has been suggested that the case involves a federal question. We will pass upon that, should occasion arise, at the proper time.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.