PINE GROVE NEVADA GOLD MINING COMPANY,
A Corporation, Appellant, *v.* W. J. FREEMAN,.
M. FREEMAN, J. G. GOLDSWORTHY, V. A.
GOLDSWORTHY, L. W. OSBORN, Respondents.

No. 3453

July 17, 1946.                 171 P. 2d 366.

*William S. Boyle,* of Reno, for Appellant.

*F. H. Koehler,* of Yerington, for Respondents.

## OPINION

By the Court, HORSEY, J.:

On July 10, 1945, the appellant, Pine Grove Nevada Gold Mining Company, a corporation, commenced an action in the First judicial district court of the State of Nevada, in and for Lyon County, to quiet the title to the patented and unpatented mining claims situated in the Wilson Mining District, Lyon County, Nevada, enumerated and described in paragraph I of plaintiff's complaint. We will, in this opinion, for convenience, in most instances refer to the parties merely as plaintiff and defendants.

The plaintiff, Pine Grove Nevada Gold Mining Company, and its predecessors in interest, Pine Grove Gold Mining Company and Pine-Delaware Mining Company, had owned said mining claims for many years prior to the commencement of said action, had erected on the Good Luck claim a mill for the milling and treatment of ores, and had constructed buildings, equipped the property with machinery, and made many valuable improvements. The plaintiff and its predecessors in interest had also expended many thousands of dollars in development work upon the property during the years of their ownership.

On February 21, 1941, William H. Metson, acting on behalf of plaintiff's predecessor in interest, Pine-Delaware Mining Company, made a valid millsite location of a portion of the land comprising the Good Luck claim, upon which portion the said mill was situated, and named same the Harriett millsite.

The defendants answered plaintiff's complaint, claiming title in themselves to all, or nearly all, of the mining ground embraced within plaintiff's unpatented claims named in said paragraph I of plaintiff's complaint, and to the said mill and all other improvements situated upon such unpatented locations, basing their claim upon the alleged fact that the plaintiff had failed to file, on or

before July 1, 1944, for the assessment year 1943–1944, in the office of the county recorder of Lyon County, Nevada, the office where the location notices or certificates of said claims are recorded, a notice of its desire to hold said mining claims, under the certain act, H. R. 2370, 30 U. S. C. A. sec. 28a note, entitled: "An Act Providing for the suspension of annual assessment work on mining claims held by location in the United States, including the Territory of Alaska," approved May 3, 1943, and had failed to perform any assessment work upon said claims during or for said assessment year commencing at 12 o'clock meridian July 1, 1943, and ending at 12 o'clock meridian July 1, 1944, and that, consequently, the said unpatented mining claims were open to relocation, and that the defendants had validly relocated said unpatented claims, as the Protection, Protection No. 1, Protection No. 2, Protection No. 3, and Protection No. 4.

Plaintiff filed its reply to defendant's answer, alleging the location of the Harriett millsite upon a portion of the ground claimed by said relocations, denying that the ground embraced within said relocations was open to relocation when the same were made, and repeating its prayer for a decree quieting its title to all of said property as described in the complaint.

The case was tried before the district court sitting without a jury, on November 20, 1945, and was ordered submitted on briefs.

On January 2, 1946, said district court filed its opinion and decision, in writing, holding, in effect, that title be quieted in plaintiff corporation to all the patented claims described in plaintiff's complaint, to the Harriett millsite and all improvements thereon situated, and to any improvements consisting of buildings or assay houses that may be upon the so-called Good Luck or Dump claims, together with the right of egress from, and ingress to, any buildings or improvements of the plaintiff corporation on said claims. The opinion and decision

of the trial court further held: "that the defendants are the owners of, and entitled to the possession of those claims known as the Protection, Protection No. 1, Protection No. 2, Protection No. 3, and Protection No. 4, and Little Jim, except insofar as they or any one of them or any portion of them do not (?) cover any ground contained within the boundaries of the Harriett Millsite claim or conflict with or overlap said Harriett Millsite, and also the buildings and improvements owned by plaintiff company upon the former claims owned by them known as the Good Luck and Dump claims." (Interpolation ours.)

The trial court signed findings of fact and conclusions of law, and its judgment, on the 28th day of January 1946, and the same were filed and the judgment duly entered on the 30th day of January 1946. The court's findings, conclusions, and judgment conform to its said opinion and decision.

The plaintiff duly moved for a new trial of said action, and, on February 2, 1946, the trial court denied said motion. It is from that court's order denying the plaintiff's motion for a new trial and from the judgment of said court upholding the validity of the said relocations, namely, the Protection, Protection No. 1, Protection No. 2, Protection No. 3, Protection No. 4 and Little Jim claims, by the defendants, and the defendants' title to the mining ground embraced therein, with the exceptions above noted, that the plaintiff has appealed.

The facts upon the basis of which the controversial legal questions involved in this case are predicated, briefly stated, are as follows: on July 30, 1943, William S. Boyle, Esq., on behalf of plaintiff corporation, caused to be filed in the office of the county recorder of Lyon County, Nevada, a notice of suspension of labor and intention to hold plaintiff's eight unpatented mining claims, being the same claims enumerated in paragraph I of plaintiff's complaint, during the year beginning at 12 o'clock meridian July 1, 1942, and ending at 12 o'clock meridian July 1, 1943 (plaintiff's exhibit I).

The plaintiff, due to the serious illness of the said William S. Boyle, its attorney, upon whom it had relied to file such notices, and, perhaps, also due to the death, in January 1943, of Mr. William H. Metson, who, from his office in San Francisco, had, for years, taken care of the detailed affairs of the plaintiff corporation, failed to file, on or before July 1, 1944, any notice of suspension of labor and intention to hold said unpatented mining claims for the year from 12 o'clock meridian July 1, 1943, to 12 o'clock meridian July 1, 1944, under the provisions of H. R. 2370, approved May 3, 1943, authorizing such suspension upon the filing of a notice such as required by said act.

On September 6, 1944, a paper purporting to be a certificate of location of the Little Jim claim, dated the 8th day of August 1944, and signed by W. J. Freeman and L. W. Osborn, was filed for record and recorded at the request of L. W. Osborn (defendant's exhibit 6).

On October 13, 1944, there was filed for record and recorded, in the office of the county recorder of said Lyon County, Nevada, by Ola Goldsworthy, the following: notice of location of protection claim, dated September 18, 1944, and signed by W. J. Freeman, L. W. Osborn, J. G. Goldsworthy and V. A. Goldsworthy. (Defendant's exhibit 1.)

Notice of location of the Protection No. 1 claim, dated September 18, 1944, and signed by W. J. Freeman, L. W. Osborn and J. G. Goldsworthy, "Locator" (defendant's exhibit 2), notice of location of the Protection No. 2 claim, dated September 18, 1944, and signed by W. J. Freeman, M. Freeman, J. G. Goldsworthy, V. G. Goldsworthy and L. W. Osborn, "Locator" (defendant's exhibit 3).

In the early part of September 1944, and, according to the testimony, a few days prior to the above-mentioned locations on September 18, 1944, the taxable and assessed property at the said mine and mill was sold for delinquent taxes to the defendants, and at the time such relocations were made, September 18, 1944,

the defendants held said property subject to plaintiff's right of redemption.

On December 14, 1944, there was filed and recorded, in the office of the county recorder of said Lyon County, Nevada, at the request of said William S. Boyle, Esq., and on behalf of the plaintiff corporation, a notice of suspension of labor and intention to hold plaintiff's said eight unpatented mining claims (the unpatented claims enumerated in paragraph I of plaintiff's complaint), for the year beginning at 12 o'clock meridian July 1, 1944, and ending at 12 o'clock meridian July 1, 1945, under the provisions of H. R. 2370, approved May 3, 1943, suspending, during said year and for the duration of the war, the requirements of annual labor on unpatented mining claims in the United States and Alaska. (Plaintiff's exhibit J.)

On June 29, 1945, there was filed for record and recorded, in the office of the county recorder of Lyon County, Nevada, at the request of L. W. Osborn, the following:

Notice of location of the Protection No. 3 claim, located the 28th day of June 1945 and signed by J. G. Goldsworthy, W. T. Freeman, L. W. Osborn, Locators. (Defendant's exhibit 4.)

Notice of location of the Protection No. 4 claim, located the 28th day of June 1945, and signed by J. G. Goldsworthy, W. Freeman, Mary Freeman, Leo Osborn, Hattie Osborn and Ruth Jeffreys, "Locator."

H. R. 2370, which operated to suspend the requirement of the assessment work for the assessment year from July 1, 1943, to July 1, 1944, for which, as above stated, the plaintiff failed to file the required notice, the filing of which was made, by the terms of said act, a condition precedent to a mine claimant obtaining the benefit thereof, is as follows:

"H. R. 2370            AN ACT

"Providing for the suspension of annual assessment

work on mining claims held by location in the United States, including the Territory of Alaska.

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the provision of section 2324 of the Revised Statutes of the United States, which requires on each mining claim located, and until a patent has been issued therefor, not less than $100 worth of labor to be performed or improvements aggregating such amount to be made each year, be, and the same is hereby, suspended as to all mining claims in the United States, including the Territory of Alaska, until the hour of 12 o'clock meridian on the 1st day of July after the cessation of hostilities in the present war as determined by proclamation of the President or concurrent resolution of the Congress: Provided, That every claimant of any such mining claim, in order to obtain the benefits of this Act, shall file, or cause to be filed, in the office where the location notice or certificate is recorded, on or before 12 o'clock meridian of July 1 for each year that this Act remains in effect, a notice of his desire to hold said mining clam under this Act." Approved May 3, 1943.

The attorney for appellant, William S. Boyle, Esq., very earnestly contends that, in view of his illness and the fact of Mr. Metson's death in January 1943, together with the fact that Mr. Metson had, for many years, looked after the details of the affairs of the plaintiff corporation, and that subsequent to his death the corporate officials at San Francisco relied entirely upon Boyle to attend to the matter of the filing of said notices, that the plaintiff should, in the circumstances, be excused, in equity, for the failure to file the required notice for the assessment year commencing at 12 o'clock meridian July 1, 1943, and ending at 12 o'clock meridian July 1, 1944, and that, consequently, the plaintiff should, in equity, be relieved entirely from the effect of such failure to file such notice during and for the said assessment year, and that, under and pursuant to the holding

of this court in the case of Dave Donoghue, M. J. McVeigh, and James McGuire, respondents, v. Tonopah Oriental Mining Company (a corporation), appellant, 45 Nev. 110, 198 P. 553, 15 A. L. R. 937, the requirement of assessment work for said year should be deemed suspended.

Plaintiff contends, in effect, that, no forfeiture being expressly provided by said act, H. R. 2370, that upon the authority of said case, none of the mining ground within the exterior boundaries of plaintiff's said eight unpatented claims was open to relocation on the 18th day of September 1944, the date when defendant's relocations known as Protection, Protection No. 1 and Protection No. 2 were made, nor on the 28th day of June 1945, the date on which the Protection claims Nos. 3 and 4 were located, and that all of said relocations were invalid and of no effect.

In the said case of Donoghue et al. v. Tonopah Oriental Mining Co., supra, the facts were very different from the facts in the instant case. In the Donoghue case the facts are well stated by Mr. Chief Justice SANDERS, in the opinion, and we quote from pages 114–116 of 45 Nev., page 554 of 198 P., as follows:

"The claim in dispute is one of a group consisting of four contiguous claims, known generally as the 'Homestake Group.' The history of the ground covered by the group dates from the formation of the Tonopah mining district. The group in 1917 was owned in common by three persons, all of whom were absent from the State of Nevada in 1918. One of the owners died in that year. The dividing line between Nye and Esmeralda counties cut through the group, leaving the claims partly in Nye and partly in Esmeralda county. The exact location of the true line between these counties was a matter of doubt, speculation, and uncertainty until after the year 1913, when the Legislature enacted a law authorizing the officials of these counties to re-establish it. Assuming that was done, nevertheless much of the

testimony in the case shows that the dividing line, in so far as it affects the ground covered by the group, was still a matter of doubt. But one claim of the group here in controversy is in Nye county. Much testimony was offered by the defendant to show that the owners of the group and others were in doubt as to how the dividing line as established affected the group and other mining ground in its vicinity.

"The proof shows that in 1918 one of the owners lived at Los Angeles and the other at Sacramento, Cal. Each wrote urgent letters, one to his friend in Tonopah and the other to his father-in-law, also residing there, to do all that was necessary and required to be done to hold their claims under the resolution of Congress for the year 1918. The friend of the owner living in Sacramento prepared the required notice and presented it to the recorder of Nye county for filing, in the month of December 1918. He was informed by the recorder that the proper place for filing the notice was in the recorder's office of Esmeralda County, at Goldfield, Nev. Thereupon he caused the notice to be filed in the recorder's office in said county, on or about the 27th day of December, 1918. Relying on the representation of the recorder of Nye county as being official and correct, he gave no further consideration to the matter, believing, of course, that he had complied, for and on behalf of his friend, with the requirement of the resolution of Congress.

"The other owner, living in Los Angeles, wrote his father-in-law on the 10th of December, 1918, to do for him all that was necessary and required to be done under the resolution to hold his claims, stating therein that he did not want to give them up. This was followed by another communication, of December 20, 1918, in which he inclosed a formal notice of desire to hold the claims in accordance with the resolution of Congress, not knowing of the steps taken by his co-owner to hold the ground, and instructed his father-in-law to file the notice in Tonopah, Nye county. The father-in-law was of the

same opinion as the county recorder of Nye county, that Goldfield was the proper place for the recordation of the notice, basing his opinon upon his own experience, with the uncertainty of the whereabouts of the true dividing line between Nye and Esmeralda Counties as it passed through the Homestake Group and other mining locations in that vicinity; and it was his opinion also that as the property consisted of a group of claims the notice required could as well be filed in either county, and therefore he caused the notice to be filed in Esmeralda county."

■ Under the peculiar and extraordinary circumstances existing in that case, Chief Justice SANDERS was justified in the following conclusion in the opinion, on page 117 of said 45 Nevada Reports, on page 555 of 198 Pacific Reporter: "First, there is no fraud or deceit; second, no intention, shown by competent, clear, and satisfying proof, to abandon the claims; third, there is good faith, and an open and honest effort to comply; and, fourth, excusable neglect or omission of others to file the notice, not attributable to the claim owner."

The owners themselves, in the Donoghue case, made an honest effort to comply with the requirement of the law; they did not leave the matter entirely to the recollection and ability of some representative, without timely action on their part, but each of the surviving owners expressly communicated, at the proper time, the one to his friend in Tonopah, the other to his father-in-law, also residing there. The owner residing in Los Angeles communicated twice, and the last time actually inclosed a formal notice. These owners, in the circumstances, reasonably had the right to believe that their notice had been filed in the recorder's office of the proper county. The fact that it was filed in the wrong county could be excused, in the circumstances, as an honest mistake, properly relievable, in equity, to prevent forfeiture. There was no neglect or failure to file the notice, as there is in the instant case. The mistake of filing in

the wrong county was one which, in view of the then existing facts and circumstances, a person of normal, average intelligence, employing the care ordinarily exercised by a person of such intelligence, would readily make.

Some of the reasons for the uncertainty and mistake were: 1. There was uncertainty as to the position upon the claims of the dividing line between the counties of Nye and Esmeralda, which passed through the group of claims. 2. The claims were contiguous and partly in the one county and partly in the other, and a person of average intelligence, not an attorney or mining engineer, would, we believe, be excusable in believing it proper to file for the entire group in the county where the greater number of the claims comprising the group were situated.

Both the reasons applied to the father-in-law of the owner, and to the friend of the other owner, and the testimony disclosed affirmatively that the father-in-law did believe it proper to file in Esmeralda County. In addition to those reasons, there was another reason, which applied to the friend of the owner in Sacramento, why the mistake was one which a person of average intelligence, using ordinary care, would make, namely, the fact that the county recorder of Nye County informed this friend of the owner that the notice should be filed in Esmeralda County. A miner or prospector of average intelligence, employing the care of an ordinary, discreet, careful person, could reasonably believe that he was justified in following the advice, upon a matter of that kind, of a county official such as a county recorder, in whose office many sorts of papers and documents affecting the title to mining and other real property are required to be filed. Such a mistake, if made honestly and in good faith, is one from the effect of which equity will relieve.

In comparison, the officers and directors of the plaintiff corporation, in San Francisco, did not do anything

whatever, so far as the record discloses, to ascertain whether or not the notice required for the assessment year 1943–1944 had been, or would be filed. They apparently depended absolutely and entirely upon Mr. Boyle, their attorney, to cause it to be filed, not taking into account the uncertainty of health nor any other uncertainty which could readily happen to any one, and which would render him unable to act within the required time. They took no step, so far as has been shown, to check as to this important matter, the performance of which was absolutely necessary to the preservation of the title to the unpatented mining claims, the actual assessment work not having been done.

■ Applying to the instant case the criterion formulated and applied by Chief Justice SANDERS, above quoted (page 117 of 45 Nevada Reports, page 555 of 198 Pacific Reporter), we find the plaintiff corporation failed completely as to the third requirement of said criterion, or test, in that it did not show an open and honest effort, nor any effort whatever, to comply with the requirement of the act, H. R. 2370. And as to the fourth requirement of said test, whilst there was excusable neglect, or omission of another (Mr. Boyle), not attributable to the plaintiff corporation, the officers and directors of the corporation were themselves inexcusably negligent in taking no steps whatever to supervise its own unpatented property sufficiently to enable them to know whether or not the notice of suspension of labor and intention to hold had been seasonably filed for the assessment year 1943–1944.

As clearly held by the authorities which have passed upon the question, it is rendered mandatory by the plain language of the act, H. R. 2370, that "every claimant of any such mining claim, in order to obtain the benefits of this Act, shall file, or cause to be filed, in the office where the location notice or certificate is recorded, on or before 12 o'clock meridian of July 1 for each year that this Act remains in effect, a notice of his desire to hold said mining claim under this Act."

Donoghue et al. v. Tonopah Oriental Mining Company (a corporation), supra, is an exceptional case. The holding is exceptional, because the facts and circumstances of the case were peculiarly exceptional and extraordinary. The notice filed in the recorder's office of Esmeralda County, in which most of the claims of the group involved in that case were situated, doubtless gave notice, at least to many persons interested in obtaining information as to claims in that vicinity and who consulted the records of that county, that the claimants of the claim in the adjoining county of Nye were claiming the benefits of the suspension statute.

No such facts or circumstances exist in the instant case. In the federal case of In re Suncrest Packers, D. C., 8 F. Supp. 917, in his opinion, Judge Norcross, cn pages 919 and 920, in interpreting the act approved May 15, 1934, 48 Stat. 777, which was an act similar to H. R. 2370, approved May 3, 1943, involved in the instant case, clearly and, we believe, correctly stated the proper interpretation of the law in regard to the filing of the notice and the effect of the failure to file such notice, as follows:

"While it is the settled law that a right in real property vests in the locator of a valid placer location made upon the · public domain, the paramount legal title remains in the United States until patent is applied. for and issued, subject to a right of possession in the locator, with the further right to exploit the same as though vested with full title, so long as the conditions of the mining laws requiring annual assessment work are complied with. If not complied with, the possessory right may be terminated by the exercise of a right granted to other citizens of the United States by the owner of the paramount title—the government of the United States—by the exercise of which right the possessory right to the land in question is transferred and that right vested in another or others. A well-understood reason lies at the base of the mining laws of the United States. It is the policy of the national government in

the promotion of the general public interest that so much of the public domain as contains mineral lodes or veins cr mineral or nonmineral deposits, as distinguished from lands primarily agricultural in character, should be open to development by private enterprise. The public interest is not only in the discovery of such lodes, veins, or deposits, but primarily in their development.

"The effect of petitioner's contention is that in the case of a locator or the owner of a mining location adjudged a bankrupt, and his possessory right by reason thereof becoming vested in a trustee, the provision of the statute permitting the land to be located by another or others, on failure to do the required annual assessment work, does not apply, at least without the authority of the court of bankruptcy. To so hold it would be necessary to read something into the statute not in accord with its plain language. Upon occasion, as in the years 1933 and 1934, Congress by special act has suspended the provisions of the statute requiring annual assessment work for a particular year. Such special statutes, however, have made a condition precedent that the locator or owner file a notice of desire to hold the claim or claims. * * *"

And in the case of Kramer v. Gladding, McBean & Co., 30 Cal. App. 2d 98, 85 P. 2d 552 (a case cited by defendants), the district court of appeal of the Third district of California expressed views similar to those of Judge Norcross in Re Suncrest Packers, supra. In its per curiam opinion, that court pointed out that the suspension of the requirement of annual assessment work for the years 1933 and 1934 was authorized only conditionally, the condition precedent being the filing, in accordance with the congressional resolution, for 1933 and 1934, of the notice to hold. In that case the owner of certain mining claims was in default in the performance of his assessment work for several years, from 1930 to 1935, and failed to file the required notice of suspension and intention to hold, under the congressional

resolution, for 1933 and 1934, but contended that, in any event, he was entitled to the suspension of the requirement, by reason of the resolution temporarily suspending the requirement of assessment work, upon the filing of such notice. The court, in its opinion, stated the following, on page 554 of 85 P. 2d: "The appellant asserts that Frederick H. Rindge did not forfeit his right to the claims for nonperformance of his assessment work after 1935 for the reason that Congress adopted resolutions in 1931, 1932, 1933 and 1934, temporarily suspending the statutory requirement of performing the assessment work on mining claims pursuant to section 2324 of the United States Revised Statutes, 30 U.S.C.A., sec. 28, during those current years on account of the depression which existed. We are of the opinion there is no merit in this contention for the reason that in 1933 and 1934 the suspension of annual assessment work on mining claims for those current years was authorized only conditionally, and not as an absolute right. 48 U. S. Stats. p. 72, and p. 777, and 30 U. S. C. A., sec. 28a, note. The resolutions for 1933 and 1934 both include a similar condition. The 1933 resolution suspending for that year the necessity of performing assessment work of the value of $100 as provided by section 2324 of the Revised Statutes of the United States contains the following proviso: 'That the provision of this Act shall not apply to the case of any claimant not entitled to exemption from the payment of a Federal income tax for the taxable year 1932: Provided further, That every claimant of any such mining claim in order to obtain the benefits of this Act, shall file, or cause to be filed, in the office where the location notice or certificate is recorded, on or before 12 o'clock meridian July 1, 1933, a notice of his desire to hold said mining claim under this Act, which notice shall state that the claimant, or claimants, were entitled to exemption from the payment of a Federal income tax for the taxable year 1932.' "

The California court, at that point, quoted from the opinion of Judge Norcross above referred to, in Re Suncrest Packers, Inc., supra.

It is certain that the plaintiff in the instant case, by its neglect and failure to cause to be filed the required notice of suspension and intention to hold, for the assessment year commencing at 12 o'clock meridian July 1, 1943, and ending at 12 o'clock meridian July 1, 1944, deprived itself of the benefits of said act, H. R. 2370, "Providing for the suspension of annual assessment work on mining claims held by location in the United States, including the Territory of Alaska," approved May 3, 1943. The filing of such notice was a condition precedent to the operation of such suspension in plaintiff's favor, and such condition not having been complied with, the suspension provided by the act was, by the very terms of the act itself, not operative as to the plaintiff. The plaintiff was, therefore, required, the same as though no such act had been passed, to do the assessment work for the said assessment year of 1943–1944, unless plaintiff could bring itself within the scope of the existence of the very limited conditions of facts and circumstances, which, the authorities generally hold, may be the basis of excusing a claim owner from the performance of the assessment work which is required by sec. 2324 of the Revised Statutes of the United States, 30 U. S. C. A., sec. 28.

We do not believe we could do better than to quote Mr. Lindley's treatment as to the circumstances which will excuse the performance of the annual labor required as a condition to continuance of the holding of an unpatented mining claim under the provisions of said sec. 2324, United States Revised Statutes.

In Lindley on Mines, 3d ed., vol. 2, pp. 1575, 1576, sec. 634, the matter is treated as follows:

"Sec. 634. Circumstances Under Which Performance of Annual Labor is Excused—During certain periods of industrial depression congress has passed special laws

suspending the provisions of the section of the Revised Statutes requiring the performance of annual labor, upon the condition, that the claimant file with the recorder of mining locations in the locality in which his claim was situated a declaration of intention to hold and work the claim in good faith; but these are mere transitory acts which have fully accomplished the object for which they were passed, and no longer require consideration. The existence of Indian hostilities in the border regions—a not infrequent occurrence in the past—where an attempt to comply with the law as to annual labor would jeopardize the life of the locator, would certainly excuse the strict fulfillment of the requirements of the law, provided, of course, that the locator returns within a reasonable time after the cessation of such hostilities, and resumes his efforts to represent his claim. This is but the application in a larger sense of the rule which excuses the performance of work when the claim is in the hostile possession of another, rendering it impossible to comply with the law without incurring risk of injury to life or limb, or committing or inviting a breach of the peace.

"A person in the peaceful and lawful occupancy of public land, for the purpose of initiating a title, having established his right so far as he could or was permitted, acquires a title which entitles him to the possession of the land as against all persons except the government. When he is forcibly prevented from fulfilling the letter of the law, it will be presumed that he would have fulfilled it if permitted so to do.

"So it has been decided that where adverse possession of a mining claim is taken and held wrongfully, the rightful owner or locator is excused from doing the assessment work during the continuance of such adverse holding.

\*       \*       \*       \*       \*       \*       \*

"A locator cannot be deprived of his inchoate rights by the tortious acts of others, but there must be a bona

fide effort to perform the work. The acts and hostile declarations of one asserting an adverse right must be so serious and menacing a character as to satisfy a man of ordinary prudence that it would be unsafe to begin work. * * *"

See, also, as to what will excuse the performance of annual labor on an unpatented mining claim, 40 C. J., pp. 833, 834, secs. 278 and 279.

So it is clear that matters of personal misfortune, such as the illness of an individual claimant of possessory mining claims, or of a member of his family, will not excuse such individual from the performance of annual labor. Neither will the action of the elements, nor financial disaster, excuse him, even though it may impose great hardship, rendering it extremely difficult for him to do the work, or cause same to be done. A poor prospector or miner may live in a cabin in the mountains, many miles from his claim; he may be ill, and the road to the claims, upon which the work must be performed, may be rendered impassable by severe storms. He is not excused even under such circumstances. If he cannot go himself, he must have the work done by another, or others. If an individual claimant is not excused under such circumstances, it would, indeed, be strange and far from a fair, equitable, and impartial administration of justice, if a corporation could be excused from doing the work upon its possessory claims merely because of the illness of its attorney, upon whom its officers had relied to have same done, and because of the indifference and failure of its officers to keep in close touch with the corporate affairs. The ordinary duty of a director of a corporation requires him to use reasonable diligence to protect the property of the corporation. This duty is not fulfilled by holding aloof from intimate contact with the local conditions existing where the property is situated, nor by infrequent communication with the local representative. If merely ordinary diligence had been used by the directors

of the plaintiff corporation, they would have learned of the illness of their attorney, Mr. Boyle, and would have taken the necessary action, through some one else, to have the work done.

■ The obligation of doing the annual assessment work is the obligation assumed by the locator of a mining claim, as a condition of his right to hold and develop the claim. The government desires the development of its mineral resources, and, instead of leasing the property and requiring a payment of rent, requires, as compensation for the right to hold and develop the property and extract the fruits of such development, that the claimant perform annual assessment work. This involves labor and the expenditure of money, or its equivalent, for supplies. It is the price the claimant pays for his right of possession and exploitation.

A tenant leasing or renting a property at a cash rental is not excused from the payment of rent because of his illness or misfortune, except under very extraordinary circumstances. This is true whether the tenant be an individual or a corporation. It is obvious that one holding the possessory right to a mining claim in a position, as to the obligation to do assessment work, as an essential condition of the right to continue in possession, which is comparable to the position of one obligated to pay rental for the right to possession of property of another sort. It is only a very few causes which the law, by reasons of public policy, recognizes as excusing and relieving from the obligation of doing assessment work in a particular year. Such causes, or reasonable excuses, do not exist in the instant case.

■ The appellant has claimed, and strongly urged in argument, that because respondents had purchased certain of the property comprising the mine and mill, at tax sale, a few days prior to the location of the Protection, Protection No. 1 and Protection No. 2, the respondents became clothed with a trust in favor of appellant; that, due to appellant's right of redemption, respondents

were under the duty to hold the property in trust for the benefit of appellant, and, upon the appellant's redemption, by paying to respondents the taxes, interest and penalties, that the respondents were in duty bound to restore the property to appellant, and could not, without violating such trust, acquire it by relocation and assert, as against appellant, an adverse claim or title to the property. We seriously doubt whether the duty of the purchaser of mining property at a tax sale, to hold the property for redemption by the delinquent taxpayer and owner, and upon redemption to take the requisite steps to relinquish, to the owner or his successor in interest, any interest he has acquired by the purchase for taxes, goes so far as to preclude the purchaser of merely the tax lien from acquiring title to the property in any lawful manner. Be that as it may, it is unnecessary for us to decide that question in the instant case, for the reason that, even assuming such a trust did exist under such circumstances, it could be deemed to extend only to the taxable property, sold at the tax sale to the respondents. Of the property comprising said mine and mill, only the patented claims, improvements thereon, and the improvements on the unpatented claims were taxable, and sold to defendants at such tax sale, subject to redemption. The unpatented claims, the title to which is in controversy in the instant case, were not taxable, nor sold for taxes to respondents. Consequently, there could be no such trust arise as to the unpatented claims, under the laws of this state, in favor of appellant.

■ It will be noted that the so-called Little Jim claim is not mentioned in the pleadings, nor was there any evidence concerning it, except the purported location notice (defendant's exhibit 6) offered and admitted at the trial. The said purported location notice appears, in the transcript (folio 458, p. 43), to have been offered by Mr. Koehler, attorney for the defendants, in conjunction with the location notices of the Protection relocations, and was admitted, without objection by Mr. Boyle,

attorney for the plaintiff, but no other evidence whatever was offered, or admitted, in regard to such Little Jim location. Said location, not having been alleged in the pleadings nor proven at the trial, the inclusion thereof by the trial court in its decision, findings and conclusions and in its judgment, holding it to be a valid location of a portion of plaintiff's unpatented mining ground and quieting title thereto in defendants, was erroneous.

■ Whilst the appellant, in its assignment of error set forth in the opening brief, has not specifically referred to the erroneous inclusion of the Little Jim claim with the relocations the validity of which were upheld by the court's decision and judgment, and title to the mining ground embraced therein held to be quieted in the respondents, the attorney for appellant, on page 1 of appellant's opening brief, has posed this question: "Did the plaintiff forfeit its right to the possessory mining claims set forth in plaintiff's complaint because it was late in filing an affidavit of an intention to hold these same mining claims?" By posing this question and immediately assuming the negative, in his argument, the attorney for appellant has taken the position that there has been no forfeiture of any of the possessory claims, and that the court's decision and judgment to the opposite effect was erroneous. This operates as a broad assignment of error, perhaps sufficient to comprehend any legal ground or reason precluding forfeiture, whether specifically pointed out or not. The appellant, in his opening brief, has assigned, also, that the decision of the court is contrary to the evidence and the law.

■ Even though an owner of an unpatented mining claim may fail, for a particular year, to do, or cause to be done, the required assessment work, or to file, or cause to be filed, a required notice of intention to hold the claims, for a year in which, by congressional act, the requirement of assessment work has been suspended, on condition that such notice be filed, nevertheless, to

enforce a forfeiture, a qualified locator must make a valid relocation of such mining claim, by performing all the acts specified by the federal law and by the state statutes as requisite and necessary to constitute a valid location of such claim.

In a suit to quiet title to an unpatented mining claim, one claiming to be a relocator thereof must, of course, in order successfully to defend against the quieting of title to the ground embraced in his relocation, both allege, in his answer, a valid relocation of the particular ground involved, and prove at the trial that he has performed all the acts essential to the making and completion of a valid relocation.

The applicable portion of the Revised Statutes of the United States is in section 2324, and is as follows: "On each claim located after the tenth day of May, eighteen hundred and seventy-two, and until a patent has been issued therefor not less than one hundred dollars' worth of labor shall be performed or improvements made during each year * * * and upon a failure to comply with these conditions, the claim or mine upon which such failure occurred shall be open to relocation in the same manner as if no location of the same had ever been made, provided that the original locators, their heirs, assigns, and legal representatives, have not resumed work upon the claim after the failure and before such location."

In Lindley on Mines, vol. 2, sec. 643, p. 1598, it is expressly stated that:

"Forfeiture is not complete until someone else enters with intent to relocate the property. (See cases cited in footnote 29, on said p. 1598, in support of the text.)

"Abandonment may occur at any time, even after full compliance with the law as to performance of annual labor. Forfeiture will only ensue upon the lapse of the statutory period, upon failure to represent the claim, and upon entry and location by another. * * *

"Forfeiture as a defense to an action must be specially pleaded * * *."

And in the same section, on p. 1600, Mr. Lindley has stated: "Where, however, either abandonment or forfeiture are relied upon, the burden of proof rests with the party asserting it."

The learned author, at this point, has cited numerous cases, in footnote 37, in support of the text.

The authorities above cited sustain our conclusion, above stated, to the effect that, in the absence of any pleading or proof of facts showing that the portion of plaintiff's unpatented mining ground embraced within the exterior boundaries of the Little Jim relocation was open to location, and that the Little Jim relocation was validly made, by performing the acts and doing the things required by the law, the trial court's decision and judgment to the effect that such relocation was valid and upholding the defendants' alleged title thereto, was erroneous, and the title to said ground should have been quieted in the plaintiff corporation.

▮ As above stated, the plaintiff resumed taking the necessary steps to protect its said unpatented mining claims, by filing, on the 14th day of December 1944, in the office of the county recorder of Lyon County, a notice of suspension of labor and intention to hold said claims for the year commencing at 12 o'clock meridian July 1, 1944, and ending at 12 o'clock meridian July 1, 1945, under the provisions of H. R. 2370, approved May 3, 1943. This act of filing said notice did not operate retroactively to invalidate the relocations previously made, while the plaintiff was in default by the failure to file the required notice for the previous assessment year, 1943–1944, but said filing of the notice on December 14, 1944, had the same effect as a resumption of work would have had under like circumstances.

▮ If actual work had been resumed December 14, 1944, such resumption, under the provisions of section 2324 Revised Statutes of the United States, would have ended the right to relocate, for the failure of the previous year, and for any prior failures, and the claims not

theretofore relocated would have ceased to be open to relocation.

A well known and frequently cited case upon the point is Feld v. Tanner, 32 Colo. 278, 75 P. 916, decided by the Supreme Court of Colorado. That case involved a situation, both as to facts and law, similar to that in the instant case. Congress, on July 2, 1898, 30 Stat. 651 passed a law similar to H. R. 2370, approved May 3, 1943, which latter act is involved in the instant case. The act of 1898 suspended the requirement of assessment work upon unpatented mining claims, as to those who enlisted in the volunteer army for service in the war with Spain. Plaintiff in that case was enlisted as a surgeon in the navy, for service in said war. He owned mining claims in Colorado, and failed to do any work on them for 1897, and the claims were open to relocation, commencing January 1, 1898, and continuing until December of 1898, at which time he filed a notice to avail himself of the suspension provided by said act of July 2, 1898. On January 1, 1899, the defendants relocated, or "jumped," the claims. The court clearly held that the relocators could not validly relocate said claims on account of the plaintiff having failed to do the work in 1897; that the ground was open to relocation, on account of such failure, from January 1, 1898, until the date in December 1898, upon which the plaintiff had filed the notice of suspension, under the terms of said act of July 2, 1898, but that on January 1, 1899, the ground had ceased to be open for relocation. The court held that the filing of said notice in December 1898 was equivalent to a resumption of work. In that connection, the court, in its opinion, on page 919 of 75 P., stated the following: "It follows, therefore, that, if plaintiff did fail to do his annual assessment work for the year 1897, the claims were, nevertheless, not liable to forfeiture for such failure, because the filing of this notice was the equivalent of resumption of full performance of the annual assessment work for the year 1898, which, in law, saved to

plaintiff all rights he ever had in the location, and voided the forfeiture which, in the absence of resuming the work, might have resulted."

And in Nesbitt v. Delamar's Nevada Gold Mining Co., 24 Nev. 273, on page 283, 52 P. 609, on page 610, 77 Ann. St. Rep. 807, Mr. Justice BONNIFIELD, in his opinion, stated: "Evidently, it was the intention of Congress, in passing the special acts of 1893 and 1894 [28 Stats. 6, 14], suspending the requirements of section 2324 of the Revised Statutes as to the annual labor on mining claims, that the recording of the prescribed notice should have the same legal effect as performing the labor." See, also, 40 C. J. p. 834, supra, and, as to resumption of work, generally, sections 289 and 290.

From the foregoing authorities, it is clear that the unpatented mining claims of plaintiff involved in this action were open to relocation from 12 o'clock meridian July 1, 1944, to the time of the filing of said notice of suspension of labor and intention to hold, which had the effect of, and was equivalent to, a resumption of work, on December 14, 1944.

The Little Jim claim of respondents was located on August 8, 1944, while the said unpatented claims of plaintiff were open to relocation, and would, insofar as it did not conflict with the Harriet millsite, have been a valid relocation of that portion of plaintiff's unpatented claims within its boundaries, if sufficient facts existed, and had been pleaded and proven, to establish the performance of the necessary acts of location; but, as before stated, such showing was not made.

The defendant's relocations, Protection, Protection No. 1, and Protection No. 2, were made September 18, 1944, while the ground was open for relocation, and were sufficiently pleaded and proven. The district court's judgment to the effect that the defendants are the owners, and entitled to the possession, of the said claims, Protection, Protection No. 1, and Protection No. 2, except insofar as any portion thereof was in conflict

with or included any portion of the Harriett millsite, or the improvements, mill or buildings on said millsite, or the buildings and improvements on the Dump and Good Lucky claims, was, we believe, correct, and has our approval.

A different situation exists, however, as to the defendants' relocations known as Protection No. 3 and Protection No. 4. As has been hereinbefore stated, these two relocations were not made until June 28, 1945, more than six months after the unpatented claims of plaintiff had ceased to be open to relocation. Plaintiff had filed its notice of suspension of labor and intention to hold, as aforesaid, on December 14, 1944, and same had the full effect of a resumption of work, and was for the year commencing July 1, 1944, and ending July 1, 1945. June 28, 1945, was, of course, within that assessment year. The plaintiff's said claims would not have been again open to relocation until July 1, 1946. They would have again become open to relocation at 12 o'clock meridian July 1, 1946, provided no assessment work was performed, or no improvements were made, upon or for them in the meantime, unless on or before that date a notice of suspension for the assessment year from July 1, 1945, to July 1, 1946, were filed.

The relocation of the said two last mentioned claims, Protection No. 3 and Protection No. 4, were invalid, and the title of plaintiff's unpatented mining claims lying and being within the exterior boundaries of said Protection No. 3 and Protection No. 4 should have been quieted within plaintiff.

It appears from the record that certain witnesses, the attorneys for both sides, and the trial judge, were confused as to the respective dates of these various relocations, and do not appear to have realized the significance of those dates in relation to the date of the filing of the last notice of suspension, and as to whether or not the particular ground involved was open to relocation when the relocations thereof were made, and, consequently, as to whether or not such relocations were valid.

The transcript reveals that Mr. Koehler, attorney for defendants, in his direct examination of Mr. Goldsworthy (tr. folio 457, p. 43), inquired:

"Q. Now the Protection, Protection No. 1, Protection No. 2, and Protection No. 3, what are the dates of those locations? A. September 18th.

"Q. Would you say the work was started within one week of September 18, 1944? (Referring to all the claims mentioned in the foregoing first question.) A. It was." (Tr. folio 460, p. 44.)

Farther on in the direct examination (tr. folio 470, p. 47) Mr. Koehler asked Mr. Goldsworthy:

"Q. In regard to Protection No. 3 and No. 4 when were they located? A. I think it was about the 29th of June.

"Q. Of what year? A. 1945, yes."

Mr. Boyle, upon cross-examination, did not ask Mr. Goldsworthy when the relocations were made.

In the direct examination of Mr. Freeman, the following questions were propounded by Mr. Koehler and answered by the witness:

"Q. Are you one of the defendants in this action? A. I am.

"Q. And one of the locators of the Protection, Protection No. 1, 2, 3 and 4? A. That's right.

"Q. When were these claims located? A. I believe— I am not positive but I think it was the 18th of September.

"Q. Of the year 1944? A. 1944, that's right." (Tr. folio 499, p. 57.)

It is evident, both from the testimony of Mr. Goldsworthy and from the certified copies of the location notices themselves, that the above testimony of Mr. Freeman as to the Protecetion No. 3 and Protection No. 4 was erroneous, but no effort on the part of any one was made to correct it by calling attention to the error, or to refute it by proper means.

Mr. Boyle asked Mr. Freeman no questions on cross-examination.

Mr. Boyle, in the findings and conclusions he evidently prepared (as they are on his stationery), included the following: "The defendants claim that their locations made on the *18th day of September,* and known as the Protection, Protection No. 1, Protection No. 2, Protection No. 3 and Protection No. 4 and Little Jim, all being placer claims except Protection No. 1 which is a lode claim cover the same ground as a portion of the above described unpatented mining · claims and the Harriett Millsite. * * *" (Tr. folio 72, p. Z-2.)

And the court, in its opinion and decision (folio 49, p. R(1), stated, as to the date of location, the following: "Defendants claim that their locations made on the 18th day of September, 1944, and known as the Protection, Protection No. 1, Protection No. 2, Protection No. 3 and Protection No. 4 and Little Jim, all being placer claims except Protection No. 1 which is a lode claim, cover the same ground as a portion of the above described unpatented mining claims and the Harriett Millsite."

But on page T(3) of said opinion and decision (folio 55), the court stated the following: "As stated above the defendants located the ground in question on the 18th day of September 1944, as to three of said claims and later on June 28, 1945, located Protection-No. 3 and Protection No. 4 and on August 8, 1945 (1944?) located the claim known as Little Jim." (Interpolation ours.)

█ We are not surprised, in view of the confusion of counsel and some of the witnesses as to the date of these relocations, Protection Nos. 3 and 4, that the court became confused, and that, as the importance of the dates, in relation to the title and the validity of said two relocations, was not pointed out to the trial judge, he did not apprehend their real significance. No point was made by the attorney for the plaintiff that the filing of the notice of suspension of labor and intention to hold, on December 14, 1944, was equivalent to a resumption of work, and that the relocations known as Protection No. 3, and Protection No. 4 were invalid, having been made

when the unpatented claims of plaintiff were not open to relocation. Whilst we would not be required to consider this point, in the absence of same being specifically assigned as error and such point not having been raised or presented in the court below, we are of the opinion that, in the interest of justice, we should do so. We do not feel that, when the error is one which can readily be cured, one party should be decreed the property within the said relocations, Protection No. 3 and Protection No. 4, which rightfully belongs to another. We regard the error as plain and fundamental. According to the weight of authority we have the right, therefore, in the interest of true, impartial justice, and it is within our discretion, to provide for the proper rectification of this serious and fundamental error which is clearly apparent from the record.

Page v. Walser, 43 Nev. 422, 187 P. 509; Wynn v. Grant, 166 N. C. 39, 81 S. E. 949; Haberly v. Farmers' Mutual Fire Relief Ass'n., 135 Or. 32, 287 P. 222, 293 P. 590, 294 P. 594; Jennings-Progress Common School Dist. No. 106 v. Marvin School Dist. No. 14, Tex. Civ. App., 42 S. W. 2d 805; Cowart v. Miner, Tex. Civ. App., 17 S. W. 2d 1077; 4 C. J. S. Appeal and Error, sec. 1220, p. 1721, and sec. 1239, p. 1735; Medynski v. Theiss, 36 Or. 397, 59 P. 871; 3 C. J. p. 1342, note 78, 4 C. J. S. Appeal and Error, sec. 1239; Universal Indemnity Ins. Co. v. Tenery, 96 Colo. 10, 39 P. 2d 776; Baker v. Denver Tramway Co., 72 Colo. 233, 210 P. 845, 29 A. L. R. 1453; White v. Crandall, 105 Fla. 70, 137 So. 272, 143 So. 871; East Coast Stores v. Cuthbert, 101 Fla. 25, 133 So. 863; Gober v. Braddock, 100 Fla. 1406, 131 So. 407; Demeter Land Co. v. Florida Public Service Co., 99 Fla. 954, 128 So. 402; Musto v. Mitchell, 105 N. J. L. 575, 146 A. 212; Mahnken v. Meltz, 97 N. J. L. 159, 116 A. 794; In re Roediger's Will, 209 N. C. 470, 184 S. E. 74; Wilson v. Kryger, 29 N. D. 28, 149 N. W. 721, affirmed Kryger v. Wilson, 242 U. S. 171, 37 S. Ct. 34, 61 L. Ed. 229; Schmitt v. City of Philadelphia, 248 Pa. 124, 93 A. 879;

3 C. J. p. 1342, note 79, 4 C. J. S. Appeal and Error, sec. 1239; Kansas City Southern R. Co. v. Guardian Trust Co., 240 U. S. 166, 36 S. Ct. 334, 60 L. Ed. 579; Weems v. United States, 217 U. S. 349, 30 S. Ct. 544, 54 L. Ed. 793, 19 Ann. Cas. 705; Clyatt v. United States, 197 U. S. 207, 25 S. Ct. 429, 49 L. Ed. 726; Wiborg v. United States, 163 U. S. 632, 16 S. Ct. 1127, 1197, 41 L. Ed. 289; State v. Crooker, 123 Me. 310, 122 A. 965, 33 A. L. R. 821; State v. Herrera, 28 N. M. 155, 207 P. 1085, 24 A. L. R. 1134; People v. Jung Hing, 212 N. Y. 393, 106 N. E. 105, Ann. Cas. 1915D, 333; State v. Griffin, 129 S. C. 200, 124 S. E. 81, 35 A. L. R. 1227; Cappon v. O'Day, 165 Wis. 486, 162 N. W. 655, 1 A. L. R. 1657; 3 Am. Jur. secs. 247 and 248, p. 33.

In said 3 Am. Jur., on page 35, it is stated in sec. 252: "Questions Necessarily Involved in Litigated Issues.— Questions necessarily involved in issues raised and litigated in the trial court are open for consideration on appeal or review, even though they were not specifically raised below." Citing Arrington v. United Royalty Co., 188 Ark. 270, 65 S. W. 2d 36, 90 A. L. R. 765.

The district court's decision and judgment are correct upon the principal points and matters involved. The judgment requires modification, but not reversal.

The judgment should be modified to the extent required to quiet title in the appellant to all portions of the unpatented mining claims, as enumerated in paragraph I of the plaintiff's complaint, that are within the exterior boundaries of respondents' relocations known as Protection No. 3, Protection No. 4, and Little Jim, and said relocations, Protection No. 3, Protection No. 4, and Little Jim, should be adjudged and decreed to be invalid.

This could be properly accomplished by amending, or modifying, the judgment of the lower court rendered the 28th day of January 1946, in the following particulars:

Add two new sentences on page 2 of the judgment, immediately following the word "claims," in line 11,

and the period (tr. folio 94, Z-7 (p. 2), to the following effect: "That title be, and it is hereby, quieted in plaintiff corporation to all the unpatented mining claims named in paragraph I of plaintiff's complaint, except to such of said unpatented claims, and/or such portions thereof, not within the exterior boundaries of the Harriett Millsite as are within the exterior boundaries of the claims located and known as Protection, Protection No. 1, and Protection No. 2. That the title to all portions of the Harriett Millsite, in conflict with, or within the exterior boundaries of said Protection, Protection No. 1, and Protection No. 2, or either or any thereof, be, and is hereby ordered and adjudged quieted in plaintiff."

And from the next sentence of said judgment (tr. folio 94, Z-7 p. 2), enumerating the claims of which the defendants are adjudged the owners and entitled to possession, the certain claims known as Protection No. 3, Protection No. 4, and Little Jim should be stricken, and, for the purpose of clarification, the word "not," in line 15, should be stricken, and in line 17 the word "except" should be inserted after the word "and" and before the word "also."

For the reasons stated, the case is hereby ordered remanded to the district court, and that court is ordered to modify its judgment as hereinbefore indicated, and when thus modified and such modified judgment has been duly entered, the said judgment, and the district court's order denying plaintiff's motion for a new trial, shall stand affirmed.

TABER, C. J., concurs.

DUCKER, J., did not participate.

ON PETITION FOR REHEARING

August 7, 1946.

*Per Curiam:*

Rehearing denied.