ARTHUR REVERT, ROBERT A. REVERT, AND THE A. REVERT TRUST, Appellants, v. CLARA ALBERTA RAY AND THEODORE T. RAY, AND GEORGE HENNEN, State Engineer of the State of Nevada, Respondents.

No. 10246

November 28, 1979                    603 P.2d 262

*Denton & Denton,* Las Vegas, for Appellants.

*Richard H. Bryan,* Attorney General, and *George Campbell,* Deputy Attorney General, Carson City, for Respondent State Engineer.

*Gary A. Sheerin,* Carson City, for Respondents Clara Alberta Ray and Theodore T. Ray.

## OPINION

By the Court, MOWBRAY, C. J.:

The instant appeal centers about the disputed right to use the waters emanating from the Beatty (also known as Revert) Springs. Clara and Theodore Ray, contending that those waters are public waters, applied to the State Engineer for an appropriation of five cubic feet per second of water from the springs. Claiming a vested right to use those waters, Arthur Revert, Robert A. Revert, and the A. Revert Trust opposed the Rays' application. Following a hearing, the State Engineer concluded that the Beatty Springs were in fact public waters and granted the Rays' application. The district court affirmed. The Reverts appeal, contending that, as a matter of law, these rulings are clearly erroneous. We agree.

The origins of this dispute predate the enactment of Nevada's water laws. Prior to 1905, Montilius M. Beatty, subsequently known as "Old Man Beatty", acquired, by squatter's possession, a vested right of some magnitude in the use of the waters flowing from the Beatty Springs. In 1905, Beatty conveyed his water rights, for consideration, to the Bullfrog

Water, Light and Power Company. Bullfrog initially put the water to beneficial use, installing a pipeline running from the springs to the short-lived boomtown of Rhyolite and executing a two year lease of those water rights to the Indian Springs Water Company in January, 1915. Bullfrog, however, eventually lost interest in the springs and vanished from the area, at some time between 1915 and 1920, without transferring or selling its water rights.

Prior to 1913, however, John K. Brunk homesteaded the land on which the Beatty Springs are located. Brunk applied for and ultimately received a U.S. patent for the land. During his stay in the Beatty area, Brunk, as well as all of his successors in interest, used the waters from the Beatty Springs openly, notoriously, and without any challenge at all. In 1913, Brunk sold his interests in the Beatty Springs and surrounding lands to E. E. and E. M. Palmer who, in turn, transferred their interests to W. E. Shirk in 1922. The Reverts, appellants herein, succeeded to Shirk's interests in 1930, and since that time have exercised exclusive dominion over the disputed waters and have, in fact, supplied the town of Beatty with its water needs from those springs.

At the hearing before the State Engineer, appellants vigorously contended that they had a vested right to use the waters of Beatty Springs, dating back to an alleged adverse possession of the springs by Brunk and the Palmers. Without reaching the issue of adverse possession, the State Engineer found that Bullfrog had abandoned its rights in Beatty Springs between 1915 and 1920 and, as a result, the water rights had reverted to the State and were now public waters subject to appropriation. The Reverts appealed this decision to the district court.

After rejecting the Reverts' request for a *de novo* hearing, the district court held a limited review of the proceedings before the State Engineer. The court found that the State Engineer's determination of abandonment on the part of Bullfrog was supported by substantial evidence, but expressed some concern over the State Engineer's apparent failure to consider the possibility that the Reverts' predecessors in interest had adversely possessed the springs prior to the time of abandonment. The district court then relied on a post-review brief filed by the State Engineer which, in conclusory terms, asserted that any use of the Beatty Springs by Brunk or the Palmers had been permissive and not adverse. Treating this brief as an actual finding of the State Engineer, the district court concluded that this "finding", though supported by "less than convincing evidence," was neither arbitrary nor clearly erroneous. As a result, the district court affirmed the decision of the State Engineer. This appeal followed.

On appeal, the Reverts contend that they were entitled to a *de novo* hearing in the district court and that the findings and conclusions of the State Engineer are either not supported by substantial evidence or are, as a matter of law, clearly erroneous. To those issues we now turn.

Contrary to appellants' suggestion, a party aggrieved by a decision of the State Engineer in an appropriation hearing is not entitled to a *de novo* hearing in the district court. The relevant statutes specifically provide that any such review shall be "in the nature of an appeal" and that the proceedings in the district court shall be "informal and summary." NRS 533.450(1) and (2). Moreover, while the legislature originally provided for such a *de novo* review, 1913 Nev. Stats., ch. 140, § 75, that provision was explicitly repealed during the next legislative session, 1915 Nev. Stats., ch. 243, § 75.

With respect to a limited review "in the nature of an appeal," neither the district court nor this court will substitute its judgment for that of the State Engineer: we will not pass upon the credibility of the witnesses nor reweigh the evidence, but limit ourselves to a determination of whether substantial evidence in the record supports the State Engineer's decision. *See, e.g.,* No. Las Vegas v. Pub. Serv. Comm'n, 83 Nev. 278, 429 P.2d 66 (1967) (and cases cited therein).

Applying this standard to the present case, we find that the State Engineer's finding of abandonment is supported by substantial evidence. Abandonment, requiring a union of acts and intent, is a question of fact to be determined from all the surrounding circumstances. Franktown v. Marlette, 77 Nev. 348, 364 P.2d 1069 (1961); In re Waters of Manse Spring, 60 Nev. 280, 108 P.2d 311 (1940). The record reflects that, prior to 1919, Bullfrog had ceased all business and corporate operations in the Beatty area, had vanished from the community, and had allowed part of its property to be sold for delinquent taxes. The recited evidence amply supports a finding of abandonment, and, despite the existence of some conflicting evidence in the record, this court will not substitute its judgment for that of the factfinder. *See* No. Las Vegas v. Pub. Serv. Comm'n, *supra.*

Our conclusion that substantial evidence supports the findings of the State Engineer does not, however, dispose of the

instant appeal. The applicable standard of review of the decisions of the State Engineer, limited to an inquiry as to substantial evidence, presupposes the fullness and fairness of the administrative proceedings: all interested parties must have had a "full opportunity to be heard," *see* NRS 533.450(2); the State Engineer must clearly resolve all the crucial issues presented, *see* Nolan v. State Dep't of Commerce, 86 Nev. 428, 470 P.2d 124 (1970) (on rehearing); the decisionmaker must prepare findings in sufficient detail to permit judicial review, *id.;* Wright v. State Insurance Commissioner, 449 P.2d 419 (Or. 1969); *see also* NRS 233B.125. When these procedures, grounded in basic notions of fairness and due process, are not followed, and the resulting administrative decision is arbitrary, oppressive, or accompanied by a manifest abuse of discretion, this court will not hesitate to intervene. State ex rel. Johns v. Gragson, 89 Nev. 478, 515 P.2d 65 (1973).

In this case, appellants argued before the State Engineer that their predecessors in interest, Brunk and the Palmers, had acquired, by adverse possession against Bullfrog, a vested interest in the waters of Beatty Springs. Resolution of this claim was essential to the full and fair determination of the instant appropriation application. If the alleged adverse possession had been effected and successfully completed prior to the date of Bullfrog's abandonment, then appellants would have established a vested interest in the disputed waters. The State Engineer, however, did not address this issue. Appellants were thus deprived of a full and fair determination of their claims. By failing to resolve appellants' critical adverse possession claim, the State Engineer manifestly abused his discretion. *See* Nolan v. State Dep't of Commerce, *supra.*

The district court, unfortunately, compounded the State Engineer's error. Though it recognized the State Engineer's failure to address appellants' critical adverse possession claim, the lower court did not remand the case to the State Engineer for a proper determination of the issue; instead, the district court looked to a post-review brief filed by the State Engineer to supply the missing findings. This was error. The State Engineer's brief amounted to nothing more than a *post hoc* rationalization for the State Engineer's prior error of omission and is not the type of "explicit and concise" finding of fact required by NRS 233B.125. The brief, in short, was not a part of the record and, thus, should not have been considered by the district court. *See* Johns v. Gragson, *supra;* City of Reno v. Folsom, 86 Nev. 39, 464 P.2d 454 (1970).

The judgment of the district court must, therefore, be reversed and the instant case remanded to the State Engineer for a full and fair determination of appellants' adverse possession claim. In this regard, we note that the finding of abandonment on the part of Bullfrog is supported by substantial evidence. The precise question, then, before the State Engineer on remand is whether appellants' predecessors in interest, Brunk or the Palmers, had adversely possessed the waters flowing from the Beatty Springs for the requisite period of time prior to the date of Bullfrog's abandonment. Accordingly, the judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

THOMPSON, GUNDERSON, and MANOUKIAN, JJ., and GABRIELLI, D. J.,[1] concur.