LAS VEGAS VALLEY WATER DISTRICT, THE OFFICE OF THE STATE ENGINEER OF THE STATE OF NEVADA, AND ROLAND D. WESTERGARD, STATE ENGINEER, DIVISION OF WATER RESOURCES, APPELLANTS, *v.* CURTIS PARK MANOR WATER USERS ASSOCIATION, RESPONDENT.

No. 13159

June 15, 1982                    646 P.2d 549

*Robert J. Miller,* District Attorney, and *Susan L. Johnson,* Deputy District Attorney, Clark County, for Appellant Las Vegas Valley Water District.

*Richard H. Bryan,* Attorney General, and *George Campbell,* Deputy Attorney General, Carson City; and *Beckley, Singleton, DeLanoy & Jemison, Chartered,* and *Mark C. Scott, Jr.,* Las Vegas, for Appellant Roland D. Westergard, State Engineer, Division of Water Resources.

*Nitz & Schofield,* Las Vegas, for Respondent.

[3]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to participate in this case, pursuant to Nev. Const., art. 6, § 19; SCR 10.

## OPINION

*Per Curiam:*

In this appeal we are asked to determine whether the district court erred in granting equitable relief to respondent.

Curtis Park Manor is a subdivision of approximately 257 half-acre lots in Northwest Las Vegas. In 1957, 1958 and 1960, Alfred Swartz, as president of Curtis Park Manor Water Users Association (hereinafter "Association"), received three temporary well permits to serve a total of 145 lots in the subdivision. The subdivision has relied on these three private wells for its water since the first homes were constructed over 20 years ago.

Each permit contained the express provision that "this permit . . . is further subject to revocation when water is available from the Las Vegas Water District. . . ." These permits were issued pursuant to NRS 534.120, which allows the State Engineer to grant temporary permits to appropriate ground water, subject to revocation "when water can be furnished by an entity such as a water district. . . ."

In 1976, Mr. Swartz, who had maintained the water system until that time and to whom users had paid a monthly fee, sold his interest in the system to the Association.

Also in 1976, the completion of a pipeline in Michael Way, adjacent to Curtis Park, enabled the Water District to serve Curtis Park. In August 1976, appellant State Engineer notified Curtis Park homeowners that pursuant to NRS 534.120, their permits were subject to revocation, since appellant Water District could now serve the subdivision. A follow-up letter notified the Association of the state's intent to revoke and requested that the Association submit its planned procedures for conversion to the District source or other alternative measures. In January 1977 the State Engineer issued an order revoking the three permits effective April 11, 1977.

The Association's search for purchasable permanent water

rights proved unsuccessful, and their application for permanent permits was denied after a hearing.[1] In February 1977, the Association filed a petition for review of the Engineer's decision to revoke the temporary permits in district court, seeking: (1) reinstatement of the revoked permits, (2) a stay in the execution of the Engineer's order until permanent water rights could be purchased or (3) a review of the Engineer's order under NRS 533.450.

The State Engineer counterclaimed, seeking to enjoin Curtis Park from servicing more than the original 145 lots, if the court cancelled the revocations. That counterclaim indicated that 169 lots were being served by the wells under the temporary permits. Testimony subsequently revealed that approximately 257 lots were served by the disputed system. The Water District intervened as co-defendant in March 1979.

The trial court determined that Curtis Park was entitled to equitable relief,[2] rescinded the Engineer's January 1977 revocation order, reinstated the permits, made them permanent and ordered that the new permits allow for appropriation of water sufficient to serve all 257 lots in the subdivision.

Appellants contend that the district court was without authority to grant equitable relief. We agree.

Respondent primarily relies on Bailey v. State, 95 Nev. 378, 594 P.2d 734 (1979), and State Engineer v. American National Insurance Co., 88 Nev. 424, 498 P.2d 1329 (1972). In both *Bailey* and *American National,* the State Engineer, pursuant to the mandatory language in NRS 533.410, cancelled permits to appropriate water because the permittees had failed to file the requisite proof of applying the water to beneficial use. The court in both cases recognized that the statute required the

---

[1] No appeal was taken from the denial of the application for permanent permits.

[2] The trial court primarily based its decision to grant equitable relief on the following findings of facts and conclusions drawn from those facts: (1) the permits had been granted and the well system had been in use for more than twenty years; (2) until notified by the Engineer in 1976, the homeowners were not aware that their permits were revocable; (3) the Association had spent approximately $250,000 in improvements on the well system, approximately $25,000 of which went toward the acquisition of permanent water rights; (4) the cost of conversion to Water District sources would be considerable; (5) the Water District would use the same aquifers to supply water to Curtis Park as Curtis Park now uses for its well system; and (6) there would be no significant impairment of any existing water rights if Curtis Park continued to appropriate water under the permits and no other persons would be damaged by such appropriation. These facts were under considerable dispute at the hearing below.

Engineer to summarily cancel the permits. Nonetheless, "[t]his directive to his office does not . . . affect the power of the district court to grant equitable relief to the permittee when warranted." American National, *supra* at 426, 498 P.2d at 1330.

In *American National,* we suggested that the legislature alleviate the "awkward and unenviable position" in which NRS 533.410 places the State Engineer. *Id.* at 426, 498 P.2d at 1330. Under that statute, he must summarily cancel permanent permits for failure to comply with filing requirements, yet the district court can reverse his decision and grant equitable relief. We suggested a legislative change in NRS 533.410, which would give the Engineer discretion in a permit cancellation. *"With such a change court reversal would only be appropriate in the event of an abuse of discretion." Id.* at 427, 498 P.2d 1331. (Emphasis added.)

NRS 534.120, the revocation statute in dispute in this case, is distinguishable from the statute in *Bailey* and *American National;* it clearly does grant the Engineer discretion to revoke temporary permits. "The state engineer *may* . . . [i]ssue temporary permits to appropriate ground water . . . which *may* be revoked. . . ." NRS 534.120(3)(a). (Emphasis added.)

In light of the discretionary nature of the Engineer's action, abuse of discretion provides the only grounds for reversal of the Engineer's decision. The district court was without authority to grant equitable relief, since an adequate remedy exists at law. *See* American National, *supra. See also,* Thrifty Drugs and Markets, Inc. v. Hunter Lake P.T.A., 85 Nev. 162, 451 P.2d 713 (1969).

We decline to rule on whether the record indicates an abuse of discretion by the State Engineer. The trial court made no determination on that issue. The record before us consists of a *de novo* hearing to determine the appropriateness of equitable relief. Such a proceeding is entirely distinct in scope and purpose from the limited judicial review for abuse of discretion. *See* NRS 533.450; NRS 233B.140(5); *see also,* Revert v. Ray, 95 Nev. 782, 603 P.2d 262 (1979).

The decision of the trial court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

GUNDERSON, C. J., MANOUKIAN, SPRINGER, and MOWBRAY, JJ., and ZENOFF, SR. J.,[3] concur.

---

[3]THE HONORABLE DAVID ZENOFF, Senior Justice, was assigned to participate in this case by the Chief Justice, pursuant to Nev. Const., art. 6, § 19.