135 Nev., Advance Opinion 41

IN THE SUPREME COURT OF THE STATE OF NEVADA

TIM WILSON, P.E., NEVADA STATE ENGINEER, DEPARTMENT OF CONSERVATION AND NATURAL RESOURCES, DIVISION OF WATER RESOURCES,
Appellant,
vs.
HAPPY CREEK, INC.,
Respondent.

No. 74266

FILED

SEP 12 2019


ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order granting a petition for judicial review in a water law case. Sixth Judicial District Court, Humboldt County; Steven R. Kosach, Senior Judge.

*Affirmed.*

Aaron D. Ford, Attorney General, and James N. Bolotin, Deputy Attorney General, Carson City,
for Appellant.

Taggart & Taggart, Ltd., and Paul G. Taggart and Timothy D. O'Connor, Carson City,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

NRS 533.395 authorizes the State Engineer to rescind a water rights permit cancellation but provides that, if the State Engineer does so,

19-38083

"the effective date of the appropriation under the permit is vacated and replaced by the date of the filing of the written petition [for review of the cancellation] with the State Engineer." Based on the State Engineer's adherence to this mandate, respondent in this case lost more than 50 years of priority in water rights—despite having invested nearly $1 million in improving water-use efficiency and otherwise having met all the substantive criteria for maintaining priority of its water rights—because its agent missed a filing deadline by a few weeks. The respondent's groundwater rights lie in an over-appropriated basin, so loss of original priority dates threatens complete loss of use of water should curtailment occur. Given these extraordinary circumstances, and pursuant to *State Engineer v. American National Insurance Co.*, 88 Nev. 424, 498 P.2d 1329 (1972), and its progeny, we hold that the district court properly granted respondent equitable relief, restoring its water rights' original priority dates.

I.

Respondent Happy Creek, Inc. ("Happy Creek") is a ranching and farming company that operates Happy Creek Ranch (the "Ranch") in the Pine Forest groundwater basin in northern Nevada. The Ranch comprises 1399 acres of deeded land that includes 855 irrigated acres, 765 of which are irrigated using the groundwater rights at issue on this appeal. In addition to its deeded acres, Happy Creek holds grazing rights to 95,126 and 6056 acres of public land in the Happy Creek and Hog John Grazing Allotments, respectively. The alfalfa produced on the 765 acres of groundwater-irrigated, deeded land is essential to the economic viability of the Ranch and its cattle operations.

The Ranch's groundwater irrigation rights, totaling 3063 acre feet annually, were appropriated and certificated in stages and carried

original priority dates ranging from 1954 to 1990. Since the first groundwater irrigation appropriation in 1954, Happy Creek and its predecessors-in-interest have diligently put the water to beneficial use. In 1994, Happy Creek hired a water rights professional, John Milton, to manage its water rights and handle its filings with the State Engineer, which Milton did without fail until 2016.

To use its water more efficiently, Happy Creek decided in 2007 to convert from flood irrigation to a center-pivot irrigation system. Milton advised that the conversion would require Happy Creek to file applications with the State Engineer to change the place of use for the Ranch's certificated groundwater irrigation rights. *See* NRS 533.325 ("any person who wishes to appropriate any of the public waters, *or to change the place of diversion, manner of use or place of use of water already appropriated,* shall, before performing any work in connection with such appropriation, change in place of diversion or change in manner or place of use, apply to the State Engineer for a permit to do so") (emphasis added). In 2009, at Happy Creek's request, Milton filed change applications with the State Engineer so the work to convert the Ranch from flood to center-pivot irrigation could proceed. The State Engineer approved the change applications and set an April 29, 2012 deadline for Happy Creek to file proofs of beneficial use (PBUs). The permits retained their original priority dates but the change in place of use meant Happy Creek could lose its water rights unless it proved beneficial use consistent with the change applications by April 29, 2012.

Happy Creek spent almost $1 million and several years upgrading its water system. The PBUs required meter readings for the 6 wells involved in the project for a minimum of 12 consecutive months.

Though the conversion work was complete, each year one or more of the totalizing flow meters on the irrigation wells failed, resulting in incomplete data needed for the PBUs. As a result, between 2012 and 2015, Milton filed, and the State Engineer granted, extensions of time (EOTs) for Happy Creek to file its PBUs. *See* NRS 533.380(3); NRS 533.410.

On May 19, 2016, the State Engineer mailed Happy Creek notice that it needed to file the PBUs (or EOTs) within 30 days to avoid cancellation of its groundwater permits. Happy Creek received the notice on May 23, 2016, and emailed it that same day to Milton, but Milton missed the June 18, 2016 deadline. (When questioned later, Milton explained that he either temporarily lost the email when he changed his computer's operating system or confused the conversion project's groundwater irrigation permits with other Ranch permits he was processing for Happy Creek at the time.) Regardless, on July 8, 2016, Milton realized his error, and on July 11, 2016, before receiving anything further from the State Engineer, Milton filed a petition on Happy Creek's behalf under NRS 533.395(2) asking the State Engineer to review the then-impending permit cancellations. But as mandated by NRS 533.410, the State Engineer cancelled Happy Creek's groundwater permits on July 19, 2016.

The State Engineer held a hearing on Happy Creek's petition to review the cancellations on October 12, 2016, which Milton and a Happy Creek representative attended. The hearing was recorded but not transcribed. Happy Creek represents, and the State Engineer does not deny, that Happy Creek's representative asked the hearing officer both to rescind the cancellations and restore the water rights' original priority dates, but the hearing officer explained that NRS 533.395(3) did not give him the authority to restore the original priority dates. Following the

hearing, the State Engineer rescinded the cancellations contingent on Happy Creek filing PBUs or EOTs within 30 days, which it did. On November 1, 2016, the State Engineer reinstated the permits. But as mandated by NRS 533.395(3), the State Engineer changed the permits' priority dates to July 11, 2016.

Happy Creek timely filed in district court a notice of appeal and a petition for judicial review. In its petition, Happy Creek asked for equitable relief in the form of an order restoring its groundwater rights' original senior priority dates. The district court granted Happy Creek's request for equitable relief, holding that even though NRS 533.395(3) constrained the State Engineer to change the priority dates to July 11, 2016, equity demanded that the permits retain their senior priority dates. In support of its decision, the district court found that Happy Creek spent several years and nearly $1 million upgrading its irrigation system; that Happy Creek continuously put the water to beneficial use; that Happy Creek attempted in good faith to protect its water rights; that the Pine Forest groundwater basin is overappropriated and subject to priority-based curtailment in the future; and that the value of the Ranch depends on the priority of Happy Creek's groundwater irrigation rights. In the district court's words, the "punishment" of losing senior priority dates "does not fit the crime" of the human filing-date error that occurred.

The State Engineer appeals. On appeal, the State Engineer challenges the authority of the district court to grant equitable relief by restoring Happy Creek's original senior priority dates.

## II.

## A.

Enacted in 1913, NRS 533.025 declares: "The water of all sources of water supply within the boundaries of the State whether above or beneath the surface of the ground, belongs to the public." The elevated importance of water in society "leads to the conclusion that it should be distributed fairly and in the broad interests of the public." David H. Getches, *Colorado River Governance: Sharing Federal Authority as an Incentive to Create a New Institution*, 68 U. Colo. L. Rev. 573. 590 (1997); Sarah F. Bates et al., *Searching Out the Headwaters: Change and Rediscovery in Western Water Policy* 182 (1993) [hereinafter *Headwaters*] ("The principle of equity arises out of the shared, public nature of water."); *see also Kansas v. Colorado*, 206 U.S. 46, 104 (1907) (quoting *Elliot v. Fitchburg R.R.*, 64 Mass. 191, 196 (1852), for the proposition that the right to use of water "is *publici juris*[:] a right to the flow and enjoyment of the water, subject to a similar right in all the proprietors, to the reasonable enjoyment of the same gift of Providence"). Thus, it was a "balancing of competing interests and equitable principles that shaped the foundations of Nevada water law." Sylvia Harrison, *The Historical Development of Nevada Water Law*, 5 U. Denv. Water L. Rev. 148. 154 (2001). And, despite that Nevada often follows its arid Western sister states in codifying and modifying the law of prior appropriation, "consideration of equity or fairness in access and distribution is one of the cardinal principles underlying every enduring water management system." Stephen P. Mumme, *From Equitable Utilization to Sustainable Development: Advancing Equity in U.S.-Mexico Border Water Management.* Water, Place, and Equity, at 117 (John M. Whiteley et al. eds., 2008); *see also* Anthony Dan Tarlock & Jason Anthony

SUPREME COURT
OF
NEVADA

(O) 1947A

6

Robison, *Law of Water Rights and Resources* § 1:1 (2018) (recognizing that although states have modified water rights by statute, "in all jurisdictions, judge-made law remains crucial to the understanding of water allocation legislation").

Consistent with this history, these policies, and the importance of water to Nevada's citizens, long-standing precedent establishes that both this court and the district courts have the authority, "when warranted," to grant equitable relief in water law cases beyond the relief, if any, that the water law statutes allow the State Engineer to grant. *State Eng'r v. Am. Nat'l Ins. Co.*, 88 Nev. 424, 426, 498 P.2d 1329, 1330 (1972) (citing *Donoghue v. Tonopah Oriental Mining Co.*, 45 Nev. 110, 117, 198 P. 553, 555 (1921)); *see Great Basin Water Network v. State Eng'r*, 126 Nev. 187, 199, 234 P.3d 912, 919-20 (2010) (citing cases "recogniz[ing] the district court's power to grant equitable relief when water rights are at issue" and "confirm[ing] that this court [also] has the power to grant equitable relief in water law cases"); *Blaine Equip. Co. v. State*, 122 Nev. 860, 868, 138 P.3d 820, 825 (2006) (suggesting that "[t]his court has, in the past, affirmed the district court's use of equitable power to grant relief contrary to that mandated by the language of a statute," but noting that the cases so holding "involve[d] an interpretation of the intent behind a joint resolution passed by [Congress] during World War I," citing *Donoghue*, 45 Nev. at 116, 198 P. at 554, or "the unique area of state water law," citing *Am. Nat'l*, 88 Nev. at 426, 498 P.2d at 1330).

*American National* presented facts similar to those in this case. The respondent applied for a permit to appropriate water, which the State Engineer approved; then, after putting its permitted water to beneficial use, the respondent permittee failed to file its PBU or an EOT by the statutory

deadline. 88 Nev. at 425, 498 P.2d at 1330. As mandated by NRS 533.410, the State Engineer cancelled the permit. The permittee filed for judicial review under NRS 533.450, seeking equitable relief. Despite the statutory directive in NRS 533.410 that "the State Engineer shall cancel the permit" if the permittee misses the PBU deadline, the district court granted equitable relief from the permit cancellation. On appeal, the State Engineer "press[ed] the point that the [district] court should not have overruled him since the word 'shall' as used in NRS 533.410 required him to cancel the permit." *Am. Nat'l*, 88 Nev. at 426, 498 P.2d at 1330. Affirming, this court held that NRS 533.410's statutory "directive to [the State Engineer's] office does not . . . affect the power of the district court to grant equitable relief . . . when warranted." *Id.*

Over the past 50 years, this court has repeatedly reaffirmed that equitable relief is available, when warranted, in water law cases. *See Dep't of Conservation & Nat. Res., Div. of Water Res. v. Foley*, 121 Nev. 77, 83, 109 P.3d 760, 764 (2005) (stating that "this court [has] embraced the principle that the district court may grant extraordinary equitable relief [where] the water rights . . . were of record [and] the holders of water rights either exercised diligence in the placement of water to beneficial use or sought relief in response to defects in the cancellation notice"); *Preferred Equities Corp. v. State Eng'r*, 119 Nev. 384, 389, 75 P.3d 380, 383 (2003) (recognizing that water rights holders may seek and obtain equitable relief, when warranted); *Desert Irrigation, Ltd. v. State*, 113 Nev. 1049, 1061 & n.7, 944 P.2d 835, 843 & n.7 (1997) (granting equitable relief to certificated water rights holder who applied to change the place of use then failed to prove beneficial use according to the conditions specified in the permit, resulting in the cancellation of the permit and consequent loss of senior,

certificated water rights); *Engelmann v. Westergard,* 98 Nev. 348, 351, 647 P.2d 385, 387 (1982) ("Although NRS 533.410 provides that water permits 'shall' be cancelled by the State Engineer when a permittee fails to file proof of application of water to beneficial use, this directive does not affect the power of the district court to grant equitable relief to a permittee when warranted."); *Bailey v. State,* 95 Nev. 378, 383, 594 P.2d 734, 737 (1979) (reversing the district court's denial of a permittee's request for equitable relief from the State Engineer's cancellation of its permitted water rights).

In 2003, the Colorado River Commission of Nevada published the seminal treatise *Nevada Water Law,* which summarizes these principles and their special application to water rights permit cancellations as follows:

> Judicial review of the state engineer's cancellation of unperfected permits has raised a special rule of judicial equity. A reviewing court may consider equitable factors in sustaining a permit, even if the state engineer could not. Notwithstanding that the state engineer must adhere to statutory procedures and standards for cancellation of permits for failure to prove that the permittee has put the water to beneficial use, the district court has discretion to provide equitable relief, as in cases where notice of prospective cancellation was not provided to the permittee. The equitable remedies available from the reviewing court are distinguishable from equitable estoppel as a defense to enforcement of the state engineer's orders.

James H. Davenport, *Nevada Water Law* 85 (2003).

### B.

Despite the unbroken and hitherto unquestioned line of authority just discussed, the State Engineer argues that the 1981 amendments to NRS 533.395 implicitly terminated Nevada courts' authority to grant equitable relief in permit cancellation cases. Specifically,

the State Engineer asserts that the precedent noted above is no longer good law because the core cases—*American National*, *Bailey*, and *Engelmann*—considered the pre-1981 version of NRS 533.395, which made no provision for State Engineer review in permit cancellation cases. *See* 1913 Nev. Stat., ch. 140, § 68, at 213. In 1981, the Legislature added subparagraphs (2) through (4) to NRS 533.395, as follows:

> 2. If any permit is cancelled under the provisions of NRS 533.390, 533.395 or 533.410, the holder of the permit may within 60 days of the cancellation of the permit file a written petition with the state engineer requesting a review of the cancellation by the state engineer at a public hearing. The state engineer may, after receiving and considering evidence, affirm, modify or rescind the cancellation.

> 3. If the decision of the state engineer modifies or rescinds the cancellation of a permit, the effective date of the appropriation under the permit is vacated and replaced by the date of the filing of the written petition with the state engineer.

> 4. The cancellation of a permit may not be reviewed or be the subject of any judicial proceedings unless a written petition for review has been filed and the cancellation has been affirmed, modified or rescinded pursuant to subsection 2.

1981 Nev. Stat., ch. 45, § 3, at 114. With the addition of these provisions allowing the State Engineer to modify or rescind a statute-based permit cancellation, the State Engineer maintains that the 1981 amendments to NRS 533.395 "resolved the concerns and considerations supporting this Court's decisions to extend equitable relief in those cases." *See Am. Nat'l.* 88 Nev. at 426-27, 498 P.2d at 1330-31 (expressing regret that the State Engineer's lack of discretion in cancelling a permit under NRS 533.410 put

SUPREME COURT
OF
NEVADA

(O) 1947A

the State Engineer in the "awkward and unenviable position. . . [of being] subject to court reversal [in equity] for a decision he is required to make" and venturing that legislative action might be desirable "to allow the State Engineer discretion in a permit cancelation under NRS 533.410 . . . [and that w]ith such a change court reversal would only be appropriate in the event of an abuse of discretion").

The Legislature is "presumed not to intend to overturn long-established principles of law" when enacting a statute. *Shadow Wood Homeowners Ass'n v. N.Y. Cmty. Bancorp. Inc.*, 132 Nev. 49, 59, 366 P.3d 1105, 1112 (2016) (quoting *Hardy Cos., Inc. v. SNMARK, LLC*, 126 Nev. 528, 537, 245 P.3d 1149, 1155-56 (2010)). And, "[t]he great principle[ ] of equity, securing complete justice, should not be yielded to light inferences, or doubtful construction." *Brown v. Swann*, 35 U.S. 497, 503 (1836). Thus, "[u]nless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied." *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946).

Neither the text nor the legislative history of the 1981 amendments to NRS 533.395 supports that, by those amendments, the Legislature eliminated equitable relief in permit cancellation cases. To be sure, NRS 533.395(2) and (3) afford the State Engineer discretion to affirm, modify, or rescind a permit cancellation that he did not have before 1981; to that extent, equitable relief is not available and judicial review is for an abuse of direction. *Cf. Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 98 Nev. 275, 278, 646 P.2d 549, 550-51 (1982) (holding that, since NRS 534.120 grants the State Engineer complete discretion to grant and, subsequently, revoke temporary permits, equitable relief is not

available and judicial review is for an abuse of discretion). But the 1981 amendments to NRS 533.395 gave the State Engineer *no discretion* in the manner of priority date: If the State Engineer modifies or rescinds a permit cancellation under NRS 533.395(2), NRS 533.395(3) imposes a mandatory, non-discretionary duty on the State Engineer to vacate the original priority date and replace it with the date the permittee files its written petition for cancellation review with the State Engineer. Functionally, the mandate to the State Engineer to change the priority date if he modifies or rescinds a permit's cancellation is as absolute as the automatic cancellation mandate at issue in *American National, Bailey*, and *Engelmann*—and, like the cancellation mandate, a proper subject of equitable relief.

A court's exercise of its *equitable authority* to revise priority date changes mandated by NRS 533.395(3) differs fundamentally from its deferential *review* of the State Engineer's discretionary decision to affirm, modify, or rescind a cancellation under NRS 533.395(2) and (3). And, not only did the 1981 Legislature fail to expressly limit Nevada courts' equitable jurisdiction in permit cancellation cases, it actually recognized that cancellations would remain subject to "judicial proceedings" in addition to straight review of the State Engineer's decision. Thus, NRS 533.395(4)—which was also added in 1981, along with NRS 533.395(2) and (3)—states that "[t]he cancellation of a permit may not *be reviewed* **or** *be the subject of any judicial proceedings* unless a written petition for review has been filed [with the State Engineer] and the cancellation has been affirmed, modified or rescinded pursuant to subsection 2." (Emphasis added.) The surplusage canon teaches that, "If possible, every word and every provision" in a statute "is to be given effect. None should be ignored [or] given an interpretation that causes it to duplicate another provision or to have no consequence."

SUPREME COURT
OF
NEVADA

(O) 1947A

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012). Applying the surplusage canon so that "reviewed" and "subject of any judicial proceedings" each has meaning, NRS 533.395(4) necessarily encompasses both abuse-of-discretion and equitable review. From the fact that the priority-reset provision in NRS 533.395(3) constitutes the principal non-discretionary feature of the State Engineer cancellation-review provisions added in 1981, the conclusion follows that the 1981 amendments to NRS 533.395 not only did not eliminate equitable review of priority date changes, they affirmatively preserved it.

This court does not consult legislative history except to disambiguate a statute fairly susceptible to more than one reading, which NRS 533.395 does not appear to be. Assuming *arguendo* that the 1981 amendments to NRS 533.395 rendered it ambiguous, the legislative history demonstrates that the Legislature did not mean to preclude equitable relief, when warranted, from a mandatory priority date change by the State Engineer. To the contrary, the legislative comments expressly state that the object of the bill was to provide "the appropriator with *another* layer of review prior to being cancelled" and "additional reasons" to relieve a permittee from a permit cancellation. Hearing on A.B. 27 Before the Assembly Econ. Dev. and Nat. Res. Comm., 61st Leg. (Nev., February 10, 1981) (statement of William J. Newman, State Engineer) (emphasis added); Hearing on A.B. 27 Before the Senate Nat. Res. Comm., 61st Leg. (Nev., March 9, 1981) (statement of Roland Westergard, Director of the Department of Conservation and Natural Resources) (stating that the bill would "provide an administrative review short of litigation"). Thus, the legislative history makes plain that the bill was intended to *expand* opportunities for a permit holder to retain water rights, not reduce the same

by terminating Nevada courts' inherent equitable powers. *See also* Davenport, *supra*, at 85 (stating, post-enactment of NRS 533.395(2)-(4), that "[a] reviewing court may consider equitable factors in sustaining a permit, even if the state engineer could not").

Our 2015 decision in *Benson v. State Engineer*, 131 Nev. 772, 358 P.3d 221 (2015), dispels any lingering doubt about the courts' authority to grant equitable relief from an NRS 533.395(3)-mandated change to a permit's original priority date. Unlike Happy Creek, the permittee in *Benson* did not file the petition for review with the State Engineer but proceeded directly to court, asking the court to restore her cancelled permit with its original priority date. Citing NRS 533.395(4), which requires a permittee to petition the State Engineer for relief before proceeding to court, we affirmed the district court's order of dismissal for failure to exhaust administrative remedies. *Id.* at 779, 782, 358 P.3d at 226, 228. We acknowledged that, under NRS 533.395(3), the State Engineer had a mandatory duty to reset the priority date, which the permittee argued made administrative review futile. But rather than resolve the case on the basis that equitable relief restoring the original priority date cannot be had as a matter of law, we held that administrative review was a necessary precursor to a subsequent judicial proceeding in equity to restore the original priority date. Not once, but twice, *Benson* refers to judicial restoration of an original priority date as an available equitable remedy following administrative review by the State Engineer as provided in NRS 533.395(2) and (3). *See Benson*, 131 Nev. at 779, 358 P.3d at 226 (if after pursuing relief from the State Engineer "a permit with a 2013 [reset] priority date [as mandated by NRS 533.395(3)] did not allow [Benson] to appropriate sufficient water, seeking judicial review would *then* have been

permissible"); *id.* at 780, 358 P.3d at 226 (requiring the permittee to pursue administrative before judicial review as it "will place the district court in a better position . . . to determine issues such as whether a party has proved adequate grounds for having a permit restored *with its original appropriation date*") (emphasis added).

In sum, the long-standing view that Nevada courts have discretion to provide equitable relief where the State Engineer does not, even after the 1981 amendments to NRS 533.395—*see, e.g.*, Davenport, *supra*, at 85 ("Notwithstanding that the state engineer must adhere to statutory procedures and standards . . ., the district court has discretion to provide equitable relief. . . .")—remains well supported. We therefore hold that the district court had the power to grant equitable relief from the new priority date that NRS 533.395(3) mandated the State Engineer to assign.

### III.

The State Engineer also argues that, even if the district court has the authority to grant equitable relief under certain circumstances, it erred in doing so in this case because the facts did not support a grant of equitable relief.[1] This claim presents a mixed question of fact and law—do

---

[1]We reject the State Engineer's additional arguments that the district court failed to make adequate factual findings, erred in granting equitable relief without first determining whether substantial evidence supported the State Engineer's decision, or abused its discretion by considering new or previously undisclosed evidence. Assuming no legal error, the district court's factual findings adequately support its decision. As for the second claimed error, Happy Creek accepts that substantial evidence supports the State Engineer's decision to rescind its permit cancellations; its point is that it deserves equitable relief, beyond that the State Engineer can grant, from NRS 533.395(3)'s priority-date reset provision. Last, the evidence presented to the State Engineer supports the equitable relief the district court granted; to the extent supplemental or previously undisclosed

the facts support the equitable relief the district court granted? Although "we will review a district court's decision granting or denying an equitable remedy for abuse of discretion," *Am. Sterling Bank v. Johnny Mgmt. LV, Inc.*, 126 Nev. 423, 428, 245 P.3d 535, 538 (2010), deference is not owed to legal error, *Davis v. Ewalefo*, 131 Nev. 445, 450, 352 P.3d 1139, 1142 (2015). So, to the extent the question is whether the facts as found allow equitable relief, de novo review applies. *Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 480, 215 P.3d 709, 717 (2009) (explaining that this court reviews mixed questions of law and fact de novo when legal issues predominate).

Certain limits on Nevada courts' authority to grant equitable relief in water law matters are already noted above; namely, that absent estoppel due to an error by the State Engineer, equitable relief is not available where water was not diligently placed to beneficial use, *see Am. Nat'l*, 88 Nev. at 425, 498 P.2d at 1330; *Desert Irrigation*, 113 Nev. at 1061, 944 P.2d at 843, or where, despite proper notice, the permittee does not petition the State Engineer for permit-cancellation review but proceeds directly to court. *See Benson*, 131 Nev. at 779, 358 P.3d at 226. Further limitations on the availability of equitable relief in the context of water law also exist—specifically, equitable relief should only be used where it improves (1) efficiency; (2) sustainability; (3) fairness; and (4) clarity. *See generally* Helen Ingram et al. *Water and Equity in a Changing Climate*, Water and Equity, at 271, 299. As discussed below, we find support for these limitations in Nevada statutory law and precedent, and determine that the district court's decision in the instant matter falls squarely within

---

evidence was allowed, it was either unnecessary and, so, harmless or justified by the need to establish an evidentiary basis for the district court to grant equitable relief beyond that the State Engineer could grant.

those guidelines.

## A.

First, efficiency—under Nevada water law, "[b]eneficial use shall be the basis, the measure, and the limit of the right to the use of water." NRS 533.035. Efficiency is therefore a central concern in this state and "fundamental to [Nevada's] water law jurisprudence." *Bacher v. State Eng'r*, 122 Nev. 1110, 1119, 146 P.3d 793, 799 (2006). Thus, to be a "better" remedy—that is, one ensuring more complete justice than a remedy provided by the law, 27A Am. Jur. 2d *Equity* § 215 (2019)—any equitable relief should more effectively promote water being used in a more beneficial, unwasteful, and efficient fashion, *see Foley*, 121 Nev. at 83, 109 P.3d at 764; *see also Water and Equity*, at 299.

Second and relatedly, sustainability—a consideration of particular importance in Nevada, where "the soil is arid, and unfit for cultivation unless irrigated by the waters of running streams" and "lands otherwise waste and valueless [may only] become productive by artificial irrigation." *Reno Smelting, Milling & Reduction Works v. Stevenson*, 20 Nev. 269, 280, 21 P. 317, 321 (1889). To properly exercise its discretion to award equitable relief, a district court should therefore take into consideration that water is an "increasingly scarce resource" and craft a remedy that recognizes the interests of future generations. *Bacher*, 122 Nev. at 1116, 146 P.3d at 797; *see also Water and Equity* at 299.

Though the State Engineer attempts to center the instant dispute on Happy Creek's negligence—claiming that "Happy Creek's own failure to comply with state permit requirements [is] what led to the imposition of NRS 533.395(3)'s consequences"—in this court's view, it is actually Happy Creek's diligent improvements to its property and continued

SUPREME COURT
OF
NEVADA

(O) 1947A

beneficial use of its water rights that are at the heart of this case. To wit, it was in fact Happy Creek's investment of nearly $1 million in the installation of the center-pivot system—an investment which improved the efficiency of the Ranch's water use and thus sustainability for future generations, in furtherance of this State's water policies, *see* Leon New & Guy Fipps, *Center Pivot Irrigation* 3 (2000), https://oaktrust.library.tamu.edu/handle/1969.1/86877 (last visited June 12, 2019) ("When properly designed and operated . . . a center pivot system conserves three precious resources—water, energy and time.")—that led to Happy Creek having its rights effectively cancelled under NRS 533.395(3). And, the State Engineer's singular focus on Happy Creek's supposed "fault" ignores that cancellation of Happy Creek's rights here occurred in spite of this significant investment and improvement in water systems and Happy Creek's decades-long, total substantive compliance with this state's water laws.

But a Nevada court has the benefit of equitable powers not available to the State Engineer and therefore is not invariably required to convert a flexible PBU filing—for which the Legislature plainly permits multiple extensions in filing, *see* NRS 533.380(3)—into one with devastating impact for Happy Creek. Though the State Engineer appears unconcerned as to the likely chilling effect the revision of Happy Creek's priority dates could have, this court notes that such rigid administration could ultimately result in perverse incentives, "serv[ing] irrigators who follow unconscionably wasteful or polluting practices," *Headwaters* at 186, over those who, like Happy Creek, implement large-scale, systematic improvements requiring new use applications, *see id.* at 184-86. Reinstating Happy Creek's original priority dates preserves the proper

incentives, better serving Nevada's joint interests of efficiency and sustainability in water usage. *See Bacher*, 122 Nev. at 1116, 1119, 146 P.3d at 797, 799.

## B.

Third, fairness—Nevada's water is more than mere commodity, it is a public good. *See* NRS 533.025 ("The water of all sources of water supply within the boundaries of the State whether above or beneath the surface of the ground, belongs to the public."). Thus, an equitable remedy must better effect justice than what the statute at issue requires by promoting increased fairness in water accessibility and "permitting equal sharing of the burdens as well as the benefits of . . . development." *Water and Equity* at 299; *see Desert Irrigation*, 113 Nev. at 1060-61, 944 P.2d at 843 (granting equitable relief where strict application of the statute was "manifestly unfair" given the circumstances); *Bacher*, 122 Nev. at 1116, 146 P.3d at 797 (noting that Nevada's water laws are "necessary to strike a sensible balance between the current and future needs of Nevada citizens and the stability of Nevada's environment"); *see also Kansas*, 206 U.S. at 117 (basing its equitable decision on the respective burdens on and benefits to the states disputing the water rights at issue).

When it comes to weighing the relative benefits and burdens of the various available remedies, equitable or not, against the parties' respective investments in the instant case, the State Engineer focuses on the perceived lack of any burden its ruling placed on Happy Creek because Happy Creek's rights were ultimately reinstated, albeit with a revised priority date. Essentially, the State Engineer would have this court limit *American National* to those situations where a holder's rights have been cancelled in whole. But, Happy Creek presented evidence that the source

SUPREME COURT
OF
NEVADA

(O) 1947A

19

from which its water is drawn is overappropriated and has already been subject to various limiting orders. Thus, the district court correctly determined that the loss of priority here could ultimately cause an effective cancellation; rendering Happy Creek's otherwise valuable rights useless at some point in the future given the overappropriation of the sources upon which they draw. And to ignore such injury would seem to run contrary to this court's precedent that recognizes that a loss of priority that renders rights useless "certainly affects the rights' value" and "can amount to a de facto loss of rights." *Andersen Family Assocs. v. State Eng'r*, 124 Nev. 182, 190, 191, 179 P.3d 1201, 1206 (2008); *see also* Gregory J. Hobbs, Jr., *Priority: The Most Misunderstood Stick in the Bundle*, 32 Envtl. L. 37, 43 (2002) ("The priority of a water right is . . . its most important . . . feature.").

Moreover, the State Engineer does not appear to dispute that Happy Creek's installation of the center-pivot system came at a significant cost to Happy Creek, nor does the State Engineer indicate that reinstating Happy Creek's original priority date causes the state or its public any identifiable harm. Thus, despite Happy Creek's massive investment in improving its use of the water in issue and that the change in priority will diminish its rights' value, and despite that the State Engineer has identified no public harm that would result from the grant of equitable relief, the State Engineer still insists on this court's rigid application of the law. But, under these circumstances, the district court's equitable remedy works a more fair distribution of water rights, being based on each party's investments and prospective injuries. *See Kansas*, 206 U.S. at 117.

## C.

Fourth and finally, clarity—because access to water is such a pressing matter in this state, an equitable remedy that promotes greater

clarity in water law and reduces confusion may be "better" than using a statute designed to improve efficiency as a penalty that could ultimately disincentivize forward-looking efforts to improve the use of scarce water resources. In the State Engineer's view, NRS 533.395(3)'s meaning is clear: it is a mandate that the Legislature intended to have the effect produced here. But, as the prior discussion makes plain, rigid application of NRS 533.395(3) in this case would result in manifest injustice. And this court cannot agree that the Legislature intended any such effect—"for it is not to be supposed that any legislative body passes an act for the purpose of doing a manifest wrong." *Goldfield Consol. Mining Co. v. State*, 35 Nev. 178, 183, 127 P. 77, 78-79 (1912) (quoting *State v. Kruttschnitt*, 4 Nev. 667, 672 (1868)). And even setting aside this presumption, the context and language of the 1981 amendments to NRS 533.395 do not support that the section was intended to eliminate this court's long-standing equitable authority. Thus, providing equitable relief here actually improves the clarity of the law at issue, ensuring that legislative language and intent can be understood in harmony with one another. *See Donoghue*, 45 Nev. at 116-18, 198 P. at 555.

We therefore reject the State Engineer's contention that equitable relief is unavailable wherever a statutory remedy exists: only an "adequate" remedy can fill equity's shoes. *See Benson*, 131 Nev. at 782 n.7, 358 P.3d at 228 n.7. And the analysis above demonstrates that the district court did not abuse its discretion in determining that the solution offered by the State Engineer's strict reading of NRS 533.395 falls short under these circumstances—restoration of the original priority dates better promotes our state's interests in efficiency, sustainability, fairness, and clarity.

SUPREME COURT
OF
NEVADA

(O) 1947A

21

According to the State Engineer, our affirmance of the district court's exercise of equitable authority in this case would be tantamount to "legislating from the bench," unwisely opening the floodgates to equitable appeals in every case involving NRS 533.395(3). But this is not so. As indicated, this case presents unique facts that fit squarely within those limiting principles previously established.

To wit: (1) Happy Creek gave up its certificated status, ultimately investing nearly $1 million to improve its irrigation system and put its water to more efficient use; (2) the permits are for water in an overappropriated basin that could be subject to curtailment based on priority in the future; (3) Happy Creek attempted in good faith to preserve its water rights and comply with procedural requirements; and (4) Happy Creek diligently and consistently put the water to beneficial use for decades. Moreover, many permit applications under NRS 533.325, partially reprinted *supra* page 3, are for new appropriations, not, as in this case, stemming from the change in place of use of certificated rights dating back half a century or more. Thus, there are likely to be very few cases like Happy Creek's, where equitable review of the State Engineer's non-discretionary revision of priority dates is required to remedy the sort of manifest injustice present here.

Equitable relief on these facts is available under this court's precedent dating back 50 years. *See supra* § II. Far from being "odd" or amounting to "rule-making from the bench," *see post,* at 7 fn.2 & 8 (Hardesty, J., dissenting), our adherence to long-standing precedent provides stability on which those subject to this state's law are entitled to rely. *Payne v. Tennessee,* 501 U.S. 808, 827 (1991) ("*Stare decisis* is the

 

preferred course because it promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."). Until today's dissent, no court or commentator has suggested that the 1981 amendment to NRS 533.395 overruled case precedent establishing judicial authority to grant equitable relief on the record presented here. Absent the "express terms" of a statute or its "plainest and most necessary implication" leading to the conclusion that the Legislature intentionally supplanted this court's common law powers, this court's common law authority endures. *W. Indies, Inc., v. First Nat. Bank of Nev.*, 67 Nev. 13, 33, 214 P.2d 144, 154 (1950); *see State Eng'r v. Cowles Bros.*, 86 Nev. 872, 877, 478 P.2d 159, 162 (1970) (reading statute as not abrogating common law based in part on NRS 1.030, providing the common law "shall be the rule of decision" so far as it is "not repugnant to or in conflict with" the United States or state constitution and laws); Scalia & Garner, *supra* page 13, at 96 (discussing the omitted-case canon and common law). The venturesome decision here is not our adherence to precedent but the destabilization of the law that would result were we to give NRS 533.395 the new-minted meaning the State Engineer and the dissent urge—a meaning neither the statute's words nor its history nor 50 years of unbroken precedent can bear.

\* \* \*

In sum, Nevada's courts' equitable authority is a long-standing, well-supported feature of the scheme governing this state's water policy. There is nothing in this court's precedent, or the language or legislative history of NRS 533.395(3), that would justify this court in overturning that precedent. Nor did the district court abuse its discretion in determining

that the circumstances this case presents fall squarely within that precedent. We therefore affirm the district court's decision to reinstate Happy Creek's original priority dates in equity.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Parraguirre

_____, J.
Cadish

_____, J.
Silver

HARDESTY, J., with whom STIGLICH, J., agrees, dissenting:

Relying on *State Engineer v. American National Insurance Co.*, 88 Nev. 424, 498 P.2d 1329 (1972), and its progeny, the majority applies equitable relief to restore the original priority dates of cancelled water rights permits. In doing so, the majority improperly substitutes equitable relief for the sole remedy when the State Engineer modifies or rescinds a cancelled permit (replacement of the permits' priority dates) provided by the Legislature in 1981 in NRS 533.395(3). And, to support its disregard of the relief mandated by statute, the majority cites dicta and misconstrues the holding in *Benson v. State Engineer*, 131 Nev. 772, 781, 358 P.3d 221, 227 (2015), in which this court *expressly distinguished* the equitable relief holding in *American National* because of the 1981 legislation. Moreover, even if equitable relief was permissible to restore a priority date against the express remedy in the statute, the majority's decision to do so in this case rests on speculation and belies the fact that Happy Creek continues to use its water rights permits under the revised priority date contemplated by NRS 533.395(3). For these reasons, I respectfully dissent.

The relevant facts in this case are undisputed. Happy Creek holds seven groundwater irrigation rights in the Pine Forest basin totaling 3,063 acre feet annually with original priority dates ranging from 1954 to 1990. In 2007, Happy Creek decided to convert from flood irrigation to a center-pivot irrigation system. Pursuant to NRS 533.325, Happy Creek through its authorized water rights professional, John Milton, filed change of manner and place of use applications with the State Engineer in 2009 to implement the conversion from flood to center-pivot irrigation. The State Engineer approved the change applications and set an April 29, 2012, deadline for Happy Creek to file proofs of beneficial use.

Between 2012 and 2015, Milton filed, and the State Engineer granted, extensions to file the proof of beneficial use. However, on May 19, 2016, the State Engineer mailed Happy Creek notice that it needed to file the proof of beneficial use within 30 days to avoid cancellation of its groundwater permits. Happy Creek received the notice, but Milton did not file anything by the June 18, 2016, deadline. On July 11, 2016, Milton filed a petition pursuant to NRS 533.395(2) requesting the State Engineer to review the impending permit cancellations. As mandated by NRS 533.410, the State Engineer cancelled Happy Creek's groundwater permits on July 19, 2016. On October 12, 2016, the State Engineer held a hearing on the petition to review the permit cancellations. On November 1, 2016, the State Engineer rescinded the permits' cancellations but, as mandated by NRS 533.395(3), changed the permits' priority dates to July 11, 2016, the filing date of the petition seeking rescission of the cancellations.

Happy Creek filed a petition for judicial review seeking equitable relief restoring its groundwater rights' original priority dates. On evidence presented to the district court, but not to the State Engineer in the administrative process, the district court granted equitable relief restoring the original priority dates. While Happy Creek argued that the Pine Forest groundwater basin is overappropriated and subject to priority-based curtailment *in the future*, no evidence showed that Happy Creek was presently prevented from using its groundwater permits with the new priority date.[1]

---

[1]We have taken judicial notice of State Engineer Order No. 1290 (Sept. 14, 2017), which curtails only *new* appropriations, not *existing* appropriations, in the Pine Forest basin.

SUPREME COURT
OF
NEVADA

(O) 1947A

As noted earlier, the majority places great emphasis on our 1972 opinion in *American National,* in which we considered language in NRS 533.410 requiring the State Engineer to cancel a permit when the holder fails to file proof of beneficial use. We concluded that though the statute mandated cancellation by the State Engineer, it did not preclude the granting of equitable relief *"when warranted."* 88 Nev. at 426, 498 P.2d at 1330 (emphasis added). What the majority fails to acknowledge is that *American National* is entirely distinguishable from this case. First, in *American National,* the State Engineer did not dispute that equity rested with the permittee and thus the only issue in that case was whether NRS 533.410 barred judicial relief. *Id.* In later cases, however, we have applied *American National* narrowly and only to situations in which the permit holder did not have actual knowledge of the cancellation until after the period for complying with NRS 533.410 or for appealing the cancellation had expired. *See Engelmann v. Westergard,* 98 Nev. 348, 351, 647 P.2d 385, 387 (1982); *Bailey v. State,* 95 Nev. 378, 382, 594 P.2d 734, 737 (1979). Here, there is no concession by the State Engineer that equity lies in favor of Happy Creek, nor is there any doubt that Happy Creek had actual notice of the cancellation of its permits in time to seek an extension under NRS 533.410.

Second, *American National* was decided before the Legislature amended NRS 533.395 to provide for an administrative review process and a remedy for permit cancellation. In 1981, the Legislature added subparagraphs (2) through (4) to NRS 533.395, as follows:

> 2. If any permit is cancelled under the provisions of NRS 533.390, 533.395 or 533.410, the holder of the permit may within 60 days of the cancellation of the permit file a written petition with the state engineer requesting a review of the

SUPREME COURT
OF
NEVADA

(O) 1947A

3

cancellation by the state engineer at a public hearing. The state engineer may, after receiving and considering evidence, affirm, modify or rescind the cancellation.

3. If the decision of the state engineer modifies or rescinds the cancellation of a permit, the effective date of the appropriation under the permit is vacated and replaced by the date of the filing of the written petition with the state engineer.

4. The cancellation of a permit may not be reviewed or be the subject of any judicial proceedings unless a written petition for review has been filed and the cancellation has been affirmed, modified or rescinded pursuant to subsection 2.

1981 Nev. Stat., ch. 45, § 3, at 114. Neither *American National* nor the other cases relied upon by the majority considered the availability of equitable relief in light of the 1981 amendments to NRS 533.395. And, as the State Engineer correctly argues on appeal, the 1981 additions to NRS 533.395 "resolved the concerns and considerations supporting this [c]ourt's decisions to extend equitable relief in" statute-based permit cancellation cases. For example, in *American National*, this court expressed concern that the State Engineer had no discretion in determining whether a permit should be cancelled. In fact, this court specifically suggested that "[l]egislative action would be appropriate to allow the State Engineer discretion in a permit cancelation under NRS 533.410," and that in such case "court reversal would only be appropriate in the event of an abuse of discretion." 88 Nev. at 426-27, 498 P.2d at 1331. The 1981 amendments to NRS 533.395 directly addressed this concern by granting the State Engineer discretion to modify or rescind a cancellation. Thus, unlike in the pre-amendment cases, where the cancellation of water permits resulted in the permit holders being unable to appropriate water unless they were

granted equitable relief, *see id.*; *Engelmann*, 98 Nev. at 350, 647 P.2d at 387; *Bailey*, 95 Nev. at 380-81, 594 P.2d at 735-36, NRS 533.395(2) and (3) now permit administrative review and allow for the rescission or modification of any cancellation.

Though no one argues in this case that the language in the statute is ambiguous, the majority claims that "[n]either the text nor the legislative history of the 1981 amendments to NRS 533.395 supports that, by those amendments, the Legislature eliminated equitable relief in permit cancellation cases." Majority opinion *ante* at 11. The plain language of NRS 533.395(2) and (3), however, provides for both a statutory process to review permit cancellations and a remedy not previously available in NRS Chapter 533. *See Bacher v. Office of the State Eng'r*, 122 Nev. 1110, 1117, 146 P.3d 793, 798 (2006) ("If a statute is clear on its face, the court cannot go beyond its plain language in determining legislative intent."). Since 1981, the State Engineer has had the statutory authority to modify or rescind a permit cancellation, and the Legislature, in its wisdom, has determined that in such event, the date of appropriation under the permit is vacated and replaced by the date of the filing of the petition seeking to modify or rescind cancellation. In concluding that nothing in the statute prevents the district court from granting relief beyond what the State Engineer is permitted to grant, the majority ignores the fact that the record before the district court must be the same record that was developed during the administrative review process. *See* NRS 533.450(1) (providing that a petition for judicial review is "in the nature of an appeal"). As we have previously clarified, both the district court and this court are limited in our review to "whether substantial evidence *in the record* supports the State Engineer's decision." *Revert v. Ray*, 95 Nev. 782, 786, 603 P.2d 262, 264 (1979) (emphasis added).

Because the State Engineer cannot grant equitable relief, no record as such would be made during the administrative process, and thus for the district court to grant equitable relief, it would have to consider evidence beyond the record in violation of the water law statutes. *See* NRS 533.450; *Revert*, 95 Nev. at 786, 603 P.2d at 264 (stating that an aggrieved party is not entitled to a de novo hearing in the district court).

The majority also claims that our recent decision in *Benson* "dispels any lingering doubt about the courts' authority to grant equitable relief from an NRS 533.395(3)-mandated change to a permit's original priority date." Majority opinion *ante* at 14. However, the majority misconstrues the holding in *Benson*. In *Benson*, the issue was whether the permit holder had to exhaust the administrative process set forth in NRS 533.395(2) before seeking judicial relief. 131 Nev. at 776, 358 P.3d at 222. To the extent we suggested that equitable relief might be available to restore the original priority date following administrative review, such statements were mere dicta. Furthermore, we explicitly distinguished *American National* in *Benson*, explaining that "[t]he difference between the statutes in force before 1981, when we decided *American National*, and in 2013, when Benson filed for judicial review of her canceled water permit, makes *American National* inapplicable to this case." 131 Nev. at 781, 358 P.3d at 227. In doing so, we cited *Smith v. Smith,* 68 Nev. 10, 22, 226 P.2d 279, 285 (1951), acknowledging that a district court does not have jurisdiction in equity *"where statutes in force required [the party] to seek his relief in another way."* *Id.* (alteration in original) (emphasis added); *see also Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 98 Nev. 275, 278, 646 P.2d 549, 550-51 (1982) (holding that where the State Engineer's action was discretionary, "[t]he district court was without

authority to grant equitable relief, since an adequate remedy exists at law" in the form of limited judicial review for abuse of discretion). While it is true that Benson was denied relief because she failed to seek administrative remedies provided for in NRS 533.395(2), it is also true that this court recognized that NRS 533.395(3) provided an adequate legal remedy even if it was not the remedy Benson wanted. That fact did not render the requirement to seek administrative remedies futile.

It is the Legislature's prerogative to determine the remedies when a permit is cancelled—not this court's. No doubt, the facts in this case are troubling. But so are the facts in many cases in which filing deadlines have been missed. And the only guardrails offered by the majority to an unbridled use of equitable relief in future cases are those listed in an article discussing conflicts in water generally, *see* Helen Ingram et al., *Water and Equity in a Changing Climate,* Water, Place, and Equity 271, 299 (John M. Whiteley et al. eds., 2008), which in itself is puzzling, as these limitations on equity bear no relationship to how water is appropriated or regulated in Nevada. *See* Elizabeth Dawson, Book Note, 12 U. Denv. Water L. Rev. 432, 432 (2009) (describing *Water and Equity* as "a look into the impact of climate change on water resources and ways to mitigate conflicts in water by employing equitable principles"). While the majority relies on *American National* for equitable relief, it adopts without explanation a set of factors that differ significantly from those enunciated in *American National* and reiterated in *Benson.*[2] With all due respect, the remedies available for

---

[2]The policies and principles of Nevada water law are unique and special in nature, *see Application of Filippini,* 66 Nev. 17, 27, 202 P.2d 535, 540 (1949) ("It is . . . settled in this state that the water law and all proceedings thereunder are special in character . . . ."), and are already comprised of "oddities" that cannot be explained away by statutory law or

modification or rescission of a cancelled permit are the exclusive province of the Legislature, and this court should not engage in rule-making from the bench by adopting suggestions made in a limited chapter of an article focused on climate change, when, as here, the Legislature provided the regulatory remedy.

But, even if equitable relief were available, it would not be appropriate in this case. Happy Creek's argument for equitable relief to override the statutory remedy is that the Pine Forest basin is overappropriated and appropriations *might* be subject to curtailment in the future. This is speculative and there has been no showing of any such order or curtailment of Happy Creek's permit use under its new priority date. As noted in *Benson*, "unproven supposition" is not sufficient to demonstrate that the remedy at law is inadequate in this case. 131 Nev. at 782, 358 P.3d at 228. I, therefore, dissent and would reverse the district court's order changing the priority dates from July 11, 2016, to the original priority dates.

_____, J.
Hardesty

I concur:

_____, J.
Stiglich

---

judicial decisions, *see* Ross E. deLipkau & Earl M. Hill, *The Nevada Law of Water Rights* 8-1 to 8-2 (2010) (noting the "pitfalls, customs, policies, and folklore" encountered in the practice of water law in Nevada). Today's decision adds yet another oddity to Nevada water law.